**Michael W. McCOY, Plaintiff,**

v.

**PENNSYLVANIA POWER AND LIGHT COMPANY, Defendant.**

**Civ. No. 4: CV–96–0090.**

United States District Court,
M.D. Pennsylvania.

July 30, 1996.

Michael W. McCoy, pro se.

C. Edward Mitchell, Bret J. Southard, Mitchell, Mitchell, Gray and Gallagher, Williamsport, PA, for defendant.

### *MEMORANDUM*

McCLURE, District Judge.

**BACKGROUND:**

Plaintiff Michael W. McCoy brings this action against his employer, Pennsylvania Power and Light Company (PP & L), alleging the violation of his rights under the Americans With Disabilities Act of 1990, (ADA) 42 U.S.C. §§ 12101–12134. Plaintiff alleges that PP & L revoked his security clearance because he is an alcoholic. The revocation of his security clearance precluded plaintiff from remaining in his job as a nuclear plant operator. PP & L reassigned him to a position on the loading dock which does not require security clearance. Plaintiff protests the reassignment and revocation of his security status as a violation of his rights under the ADA.

PP & L moves to dismiss the complaint under Rule 12(b) for failure to state a cause of action. Its motion is unopposed. Local Rule 7.6. For the reasons which follow, we

consider the motion on the merits and will dismiss the complaint.

## DISCUSSION

### Rule 12(b)(6) motion

In deciding defendants' motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule 12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.*

### ADA claims

The ADA was enacted to bar employers from discriminating against qualified individuals with a disability. To establish a *prima facie* case under the ADA, a plaintiff must show that: 1) he is "disabled" as defined by the ADA; 2) he is qualified, with or without reasonable accommodation, to do the job he held or seeks; and 3) his failure to get or keep the job constituted unlawful discrimination based on his disability. Adapted from *White v. York International Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995); *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 212 (4th Cir.1994); *Zambelli v. Historic Landmarks, Inc.*, 1995 WL 116669 at * 3 (E.D.Pa. Mar. 20, 1995); and 42 U.S.C. § 12112(a).

Under the ADA, a "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Acts of discrimination may include failing or refusing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" who is a current or prospective employee. 42 U.S.C. § 12112(b)(5)(A).

### McDaniel v. AlliedSignal

At issue in this case is the interplay between the regulations propounded by the Nuclear Regulatory Commission (NRC) requiring that only individuals with security clearance be permitted to serve as nuclear plant operators, 10 C.F.R. Chapters 26 and 73, and the provisions of the ADA.

The United States District Court for the District Court of Missouri considered the interplay between government-mandated security clearance requirements and the ADA in *McDaniel v. AlliedSignal, Inc.*, 896 F.Supp. 1482 (W.D.Mo.1995). Floyd McDaniel was employed by a government contractor, AlliedSignal, Inc. (AlliedSignal), which performed work for the United States Department of Energy (DOE). Under the terms of its contract, AlliedSignal had to conform to all DOE security requirements and could not allow individuals to have access to classified information unless the requirements of the Atomic Energy Act, Executive Order 12356 and DOE security regulations and requirements, 10 C.F.R. §§ 710.1–710.60, were met. Because all AlliedSignal employees had access to classified information relating to national security, DOE imposed a contractual requirement that all AlliedSignal employees obtain and maintain a DOE security access authorization (security clearance) from the federal government.

A DOE Administrative Order required contractors to "establish and implement procedures within their organization to assure that information regarding any employee mental illness which may cause a significant defect in judgment or reliability is promptly brought to the contractor's attention." *Id.* at 1484.

An awareness of such difficulties triggers an obligation on the part of the employer to alert DOE. "Once aware of this information, the contractor must promptly notify the appropriate DOE official with specific data." *Id.* "Relevant to this action, when an employee who may have a mental illness has been hospitalized or is otherwise being treated, the contractor must provide the DOE with

(1) the employee's full name, social security number, and date of birth; (2) compe-

tent medical authority's opinion as to whether the employee has (or does not have) a mental illness which may cause a significant defect in judgment or reliability; (3) management action taken or contemplated; (4) after hospitalization, but prior to return to work, a current statement is required from a competent medical authority that the employee does not have a mental illness which may cause a significant defect in judgment or reliability; and (5) other details considered pertinent."

*Id.*

DOE regulations impose on the government contractor an obligation to collect and relay to it any derogatory information which could imperil an employee's security clearance. In response to this obligation, Allied-Signal relayed to DOE information it received about psychological problems McDaniel was experiencing. McDaniel was twice hospitalized for major depression and was also arrested for and pled guilty to driving under the influence. This information was relayed by AlliedSignal to DOE and resulted in the suspension of plaintiff's security clearance. Information which came to light after the suspension indicated that plaintiff had also been hospitalized for alcoholism. McDaniel's security clearance was later revoked.

McDaniel challenged the revocation in federal court in an action filed under the ADA. The court summarized the issues before it as:

(1) Is a security clearance a "qualification" for Plaintiff's job under the ADA?

(2) Is a security clearance an "essential function" of Plaintiff's job under the ADA?

(3) When an employer knows that a disability will result in the loss of a security clearance, does an employer have a duty to accommodate that disability by providing medical care that cures or mitigates the disability to the extent

that a security clearance would be assured?

*Id.* at 1487.

In concluding that security clearance was a qualification of plaintiff's job, the court considered: 1) legislative history of the ADA which "strongly indicates that Congress intended retention of a government security clearance to qualify as an essential job function under the ADA;"[1] 2) evidence that AlliedSignal "has always considered a security clearance to be an essential function of all employment positions at the Kansas City Plant;" and 3) case law decided under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, finding that required security clearance issued by the United States Navy was an essential function of a civilian computer specialist, *Guillot v. Garrett,* 970 F.2d 1320 (4th Cir.1992).

Having determined that security clearance was, under the facts before it, an essential function of plaintiff's job, the court then considered whether plaintiff could have performed this essential function with a reasonable accommodation from AlliedSignal. The court found that there was nothing in the record to show that AlliedSignal had any authority to rescind or modify the security clearance requirement. Plaintiff's security clearance was revoked by DOE, not Allied-Signal, and was based on requirements imposed on AlliedSignal by DOE, not on decisions or determinations made independently by AlliedSignal.

After reviewing Supreme Court precedent holding that a governmental agency's decision to grant, deny or revoke a security clearance is not open to further review, *Department of Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the court held that "[b]ecause the security clearance process is committed by law to federal agency discretion, however, this Court finds that AlliedSignal cannot effect and assure the out-

---

**1.** *McDaniel,* 896 F.Supp. at 1487. The court then quoted from the committee report:

> The Committee also notes that the federal government, in granting national security clearances, takes into account current or former drug or alcohol use in denying or terminating such clearances. *The Committee recognizes*

> *that any function of any employment position that requires a security clearance is an essential function of the employment position.*

*Id.,* at 1487–88, quoting H.R.Rep. No. 485(II), 101st Cong., 2nd Sess. 57, *reprinted in* 4 U.S.C.C.A.N. 339 (1990). (Emphasis in original)

come of the Government's security clearance decisions." *McDaniel*, 896 F.Supp. at 1490–91. "In sum, the Court finds that AlliedSignal cannot accommodate the essential function of maintaining a government security clearance." *Id.* at 1491.

This finding led the court to conclude that McDaniel could not be considered a qualified individual with a disability within the meaning of the ADA, since no reasonable accommodation by AlliedSignal could remove the security clearance requirement or rescind the suspension or revocation of plaintiff's security clearance, that being a matter controlled by the DOE and constrained by its regulations.

McDaniel also challenged the security clearance requirement as an employer-generated qualification standard which screened out individuals with a disability. The court rejected that contention, stating:

> The ADA specifically states … that an employer *can* utilize even those qualification standards that screen out individuals with disabilities on the basis of disability as long as the qualification standard is "job-related and consistent with business necessity." 42 U.S.C. § 12112(b)(6); *see also* 42 U.S.C. § 12113(a) (may be a defense to a charge of discrimination where job qualification is shown to be job-related and consistent with business necessity). Because the Court finds a security clearance to be an essential function of Plaintiff's employment position, it seems to go without saying that a security clearance is both job-related and consistent with business necessity. Accordingly, the Court finds that the qualification standard requirement of a security clearance to maintain Plaintiff's employment does not violate this section of the ADA.

*Id.* at 1491. See also: *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir.1995).

### Plaintiff's allegations

The details given in plaintiff's complaint are somewhat sketchy but provide enough to outline the key events upon which his claim is based. Plaintiff alleges that after he notified PP & L of his disability on September 7, 1994, he was transferred to a position on the loading dock. He states that on April 21, 1995 he was evaluated by a company-retained evaluator, and that thereafter his security clearance was revoked. Attached to the complaint is a copy of a notice dated May 2, 1995 which states that plaintiff's security clearance was suspended on September 28, 1994 after PP & L received notice that plaintiff had been "self-admitted" to supervision, was an alcoholic, was experiencing marital problems and was arrested for DUI (driving under the influence). The suspension notice was signed by William L. Bohrer, Director–Corporate Security. There is a further notation on the same sheet which states "Fail psych—Dr. Baird–4/13/95," and the notation of a denial of clearance, citing Rule 8.

Attached to the foregoing notice is a single sheet bearing the heading "Denial Criteria," with a list of nine criteria. Item number eight on the list is highlighted and has a checkmark beside it. It reads: "A psychological evaluation which indicates that the individual is a risk in terms of trustworthiness or reliability."

Also attached as an exhibit to plaintiff's complaint is a document titled "Clearance File Review," which states that Chris D. Lopes, Manager–Nuclear Security made the decision to deny security clearance to McCoy on May 2, 1995, based on the following criteria:

> \* A psychological evaluation which indicates that the individual is a risk in terms of trustworthiness or reliability.
>
> – Psychological evaluation performed April 13, 1995 determined subject is a security risk for a nuclear assignment at the present time. Recommendation is that subject remain on special assignment until evidence of sobriety for at least one year and then be re-evaluated.

The document indicates that "security clearance is to remain denied," is signed by Robert G. Byram, Senior Vice President–Nuclear, and is dated May 23, 1995.

Additional documents attached to the complaint reflect the following: 1) plaintiff was diagnosed an alcoholic and received treatment for his condition from August 17, 1994 to November 15, 1994; and 2) an assessment

from Dave Steffenauer, plaintiff's direct supervisor, that plaintiff, whom he has known for seven years, is trustworthy and reliable.

PP & L contends that NRC regulations required it to suspend McCoy's security clearance after it received notice of a problem with alcoholism and other psychological difficulties. NRC regulations impose on the licensee (PP & L) the obligation of establishing and maintaining "an access authorization program" to assure that individuals granted access to secure areas "are trustworthy and reliable and do not constitute an unreasonable risk to the health and safety of the public, including a potential to commit radiological sabotage." 10 C.F.R. § 73.56(b).

NRC regulations also impose on nuclear reactor licensees an obligation to implement what are know as "Fitness for Duty Programs." Regulations require that such programs apply to "all persons granted unescorted access to nuclear power plant protected areas," 10 C.F.R. § 26.2., and "provide reasonable assurance that nuclear power plant personnel ... will perform their tasks in a reliable and trustworthy manner and are not under the influence of any substance, legal or illegal, or mentally or physically impaired from any cause, which in any way adversely affects their ability to safely and competently perform their duties ... and have a goal of achieving a drug fee workplace and a workplace free of the effects of such substances." 10 C.F.R. § 26.10.

The regulations also impose an obligation on the part of the licensee to take remedial action if such problems are brought to its attention. Chapter 26 regulations require "each licensee subject to this part" to suspend or revoke the right of employees with such problems to unrestricted access to secure areas of the plant. 10 C.F.R. § 26.27. These requirements and restrictions are implemented and explained to employees in PP & L's Personnel Security Manual.

PP & L submits, in support of its motion to dismiss, a psychological evaluation report dated December 15, 1994 from Carl S. Payne, M.S.Ed. Dr. Payne states plaintiff should not be considered a security risk if he can remain sober for one year. (Record document no. 7, exhibit "C") [2]

PP & L argues that plaintiff's alcoholism, and attendant psychological and legal problems, rendered him no longer qualified to hold security clearance status, and that its obligation, imposed by NRC regulations to police potential security risks and take remedial action if necessary, required it to revoke plaintiff's security status at least until such time as there is clear evidence that his problem with alcoholism is in the past and that he can be allowed unrestricted access to secure areas with no potential threat to the plant or the public.

The issues here are the same as those considered by the district court in *McDaniel,* i.e. whether 1) security clearance is a "qualification" necessary to plaintiff's job as a nuclear plant operator under the ADA; 2) whether obtaining and maintaining security clearance is an "essential function" of plaintiff's job under the ADA; and 3) whether PP & L had a duty to accommodate plaintiff's disability by, e.g. lifting the security clearance requirement or granting him continued clearance despite warning signals suggesting that he does not meet the criteria for continued employment in a secured area imposed by the Fitness of Duty Program. See *McDaniel,* 896 F.Supp. at 1487.

For the reasons stated by the district court in *McDaniel,* we reach the same conclusions. We find that: 1) NRC regulations make security clearance an essential component of plaintiff's former job as a nuclear plant operator; 2) maintaining security clearance is an essential job function and any revocation or suspension of that status renders an employee ineligible, i.e. not qualified, under NRC regulations, to work as a nuclear plant operator; 3) suspension and revocation

---

**2.** Since we decide this motion under Rule 6(b), not Rule 56, Dr. Payne's report did not play a material role in our analysis and we would have reached the same result without it. It is clear from the documents attached to plaintiff's complaint that the basis for the revocation of his security clearance was the diagnosis of alcoholism and related emotional, psychological and legal problems experienced by McCoy.

**444**

of plaintiff's security clearance was not only justified, but necessitated, by McCoy's alcoholism and related emotional and psychological problems; 4) failure to suspend or revoke his security status would have placed PP & L in conflict with, and in derogation of, its duties as an nuclear plant licensee to safeguard the public welfare by restricting unsupervised access to secure areas to those not likely to pose a risk to operation of the plant; and 5) PP & L could make no "reasonable accommodation" that would have allowed plaintiff to remain in his former position and retain his security clearance without compromising its obligation imposed by NRC regulations to supervise carefully employees granted access to secure areas and take steps to restrict access by any employee who poses a potential threat to the safe operation of the plant. For all of these reasons, it is apparent as a matter of law that plaintiff is not a qualified individual with a disability within the meaning of the ADA, since his disability precludes him from retaining the security clearance necessary to perform his former job.

■ Finally, even if we were to conclude that plaintiff is a covered individual under the ADA, PP & L's reassignment of him to a loading dock position which does not require security clearance is a reasonable accommodation within the meaning of the ADA, See, e.g., *Pattison v. Meijer, Inc.*, 897 F.Supp. 1002, 1008 (W.D.Mich.1995), such that no liability attaches to its decision to revoke his security status.

\*　　\*　　\*

An order will be issued consistent with this memorandum.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The Rule 12(b) motion filed by the defendant Pennsylvania Power and Light Company (PP & L) (record document no. 7) is granted.

2. Plaintiff's complaint is dismissed with prejudice and without leave to amend.

3. Any appeal from this order will be deemed frivolous and without merit.

4. The Clerk of Court is directed to close this file.