**William R. LATCH**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.**

No. CIV.A. 96–CV–6037.

United States District Court, E.D. Pennsylvania.

Nov. 12, 1997.

---

Pietro A. Barbieri, Barbieri & Associates, Philadelphia, PA, William T. Wilson, Legg & Wilson, West Chester, PA, for Plaintiff.

Nicholas J. Staffieri, SEPTA Legal Division, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA") has filed a motion for summary judgment on all claims set forth against it by plaintiff in this ADA/PHRA action. For the reasons which follow, the motion is granted in part and denied in part.

### Background

In January, 1981, SEPTA hired the plaintiff, William Latch, as a bus driver working out of its 69th Street terminal. (Exhibit 1, p. 9). Following a brief layoff that same year, plaintiff resumed work as a bus driver in January, 1982 and continued to work full time for SEPTA until February 23, 1992 when he suffered a myocardial infarction (heart attack). (Exhibit 1, pp. 10–11). Although plaintiff's treating physician certified that he could return to his usual duties as a bus driver on May 4, 1992, SEPTA's medical department disqualified him from the position because his thallium stress tests continued to show that Mr. Latch had ischemia. (Exhibit 9). As a result, plaintiff was effectively terminated from his employment with SEPTA one year later. (Exhibit 1, pp. 11–14; Pl's Complaint, and Defendant's Answer, ¶s 19, 23–24, 26–27).

In April, 1993, plaintiff filed the first of two charges of discrimination with the Equal Employment Opportunity Commission against SEPTA alleging that SEPTA's actions constituted unlawful discrimination against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (Exhibits 11 and 12). Mr. Latch filed a second charge with the EEOC in December, 1994 alleging that SEPTA's refusal to hire him for a part-time driver in its tourist-centered "Philly Phlash" bus program was in retaliation for his earlier charge of discrimination and thus constituted a second violation of the ADA. (Exhibits 12 and 13).

On May 12, 1995, the EEOC issued a determination with respect to the first charge that the evidence presented to it established a probable violation of the ADA. (Exhibit 9). In July, 1996, plaintiff received a right to sue letter from the EEOC on his second charge. (Pl's Complaint, Exhibit 4). Plaintiff thereafter filed this lawsuit on September 3, 1996 in which he again alleges that SEPTA's refusals to allow him to return to work as a bus driver after May, 1992 and to hire him for the Philly Phlash program were violations of the ADA and the Pennsylvania

Human Relations Act, 43 P.S. § 951, *et seq.* Defendant responded by filing an answer with affirmative defenses in which it contends that no violations of either Act occurred as plaintiff was not a qualified individual with a disability since he could not perform the essential functions of the job because he had active ischemia. At the completion of discovery, defendant filed this motion for summary judgment.

### Standards Governing Motions for Summary Judgment

The legal standards and principles to be followed by the district courts in resolving motions for summary judgment are clearly set forth in Fed.R.Civ.P. 56. Subsection c of that rule states, in pertinent part,

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa. 1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa. 1990).

When, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate may be entered against [it]." Fed.R.Civ.P. 56(e).

A material fact has been defined as one which might affect the outcome of the suit under relevant substantive law. *Boykin v. Bloomsburg University of Pennsylvania,* 893 F.Supp. 378, 393 (M.D.Pa.1995) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.,* citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

By way of its motion for summary judgment, defendant contends that plaintiff cannot prevail because the record now establishes that at the time its medical department disqualified him as a bus operator in 1992, he had (and may still have myocardial ischemia) and that this court does not have jurisdiction to consider plaintiff's claim that SEPTA failed to reasonably accommodate him as this issue was not raised before the EEOC. In addition, defendant submits and plaintiff concedes, that there is insufficient evidence that the decision to not hire him for the Philly Phlash bus program was in retaliation for his filing the earlier charge of discrimination with the EEOC. In view of plaintiff's concession, summary judgment shall be entered in SEPTA's favor on Counts III and IV of the Complaint. We thus need only address SEPTA's arguments with regard to Counts I and II of Mr. Latch's complaint.

■ As a general rule, the analysis for claims of employment discrimination under the ADA and the PHRA is co-extensive in that the Pennsylvania courts typically interpret the PHRA in accord with its federal counterparts. *Kelly v. Drexel University,* 94 F.3d 102, 105 (3rd. Cir.1996). Under the

ADA, an employer is prohibited from discriminating against a qualified individual with a disability because of that individual's disability through its job application procedures, hiring, advancement or discharge of employees, employee compensation, job training or its terms, conditions and privileges of employment. 42 U.S.C. §§ 12111(4), 12112(a). The PHRA, in turn, prohibits an employer from refusing to hire, discharging, or otherwise discriminating against an employee on the basis of age or non-job related handicap or disability. 43 P.S. § 955(a). A "disability" is a physical or mental impairment that substantially limits one or more of the major life activities of an individual (including working), a record of such impairment or being regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 CFR § 1630.2; 43 P.S. § 954(p.1).

To qualify for relief and state a prima facie case under these acts, the plaintiff must establish:(1) that he is a disabled person within the meaning of the Act; (2) that he is qualified to perform the job at issue; that is, with or without reasonable accommodation, he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability and replaced him with a non-disabled person. *Wooten v. Farmland Foods,* 58 F.3d 382, 385, (8th Cir.1995); *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir. 1995); *McCoy v. Pennsylvania Power and Light Co.,* 933 F.Supp. 438, 440 (M.D.Pa. 1996); *Kuehl v. Wal–Mart Stores, Inc.,* 909 F.Supp. 794, 799 (D.Colo.1995). Until an employee demonstrates that he was capable of performing the essential functions of his position, with or without accommodation, the employer is under no corresponding duty to make a reasonable accommodation. *Whitbeck v. Vital Signs, Inc.,* 934 F.Supp. 9, 15 (D.D.C.1996).

Likewise, in determining whether an employee is a qualified person with a disability, the court must examine the essential functions of the job and then evaluate the medical evidence as to whether the employee can perform those functions. *Johnson v. City of Port Arthur,* 892 F.Supp. 835, 841–842 (E.D.Tex.1995), citing *Gilbert v. Frank,*

949 F.2d 637 (2d Cir.1991) and *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979).

The basic function of a bus driver is to operate a motor vehicle in a timely, responsible fashion and in such a way that does not threaten the safety of his passengers or other motorists. *Myers v. Hose,* 50 F.3d 278, 282 (4th Cir.1995). Under 49 CFR § 391.41(b)(4), "a person is physically qualified to drive a commercial motor vehicle if that person . . . .[h]as no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse or congestive heart failure . . ."

It is clear from the record in this case that plaintiff was employed as a SEPTA bus driver from January, 1981 until February 23, 1992 when he suffered a heart attack. (Exhibit 1, 10–11). While plaintiff's cardiologist certified that he could return to his usual duties as a bus driver as of May 4, 1992, his thallium stress tests continued to show evidence of ischemia. (Exhibit 9). Based upon these test results and SEPTA's doctors' understanding of § 391.41 of the Code of Federal Regulations, defendant's medical department disqualified plaintiff from his position and refused to allow him to return to work. (Exhibits 6, 9, 18).

In addition to the conflicting medical opinions of plaintiff's cardiologist and defendant's medical director, the parties have provided reports from additional physicians which bolster their respective medical opinions and positions. (Exhibits 6, 17, 18). Included in these materials is a report from one of plaintiff's medical experts, Nicholas L. DePace, M.D., which indicates that the plaintiff is entirely asymptomatic from a cardiac standpoint and that he found no evidence of acute or significant ischemic changes in either his examination of plaintiff or in his review of plaintiff's medical records and thallium stress tests. (Exhibit 17).

In view of this conflicting evidence, this Court finds that a material issue of fact exists as to whether plaintiff could perform

the essential functions of a bus driver and whether he is indeed a qualified person with a disability within the meaning of the ADA and the PHRA. It therefore follows that summary judgment cannot be granted in defendant's favor.

■ We must make the same finding as to plaintiff's claim that SEPTA failed to reasonably accommodate him after it refused to allow him to return to work. In so doing, we reject defendant's allegation that this issue was not presented to and considered by the EEOC. To the contrary, even a cursory reading of the plaintiff's affidavit in support of his EEOC charge and the EEOC's determination demonstrates that evidence on the reasonable accommodation issue was presented to and considered by the agency. ("Charging Party sought accommodation by seeking a "light duty" job. Although Respondent states that it has no "light duty" jobs, Respondent has the burden to show definitively that there are no available jobs that Charging Party can perform which would reduce the risk ...") (Exhibit 9, at 0026). As the deposition testimony of plaintiff, Thomas Cain, Sylvia Chandler, Peggy Fitts, Robert Stover and the affidavit of Bernard McNeilis may be interpreted as suggesting that alternative positions may have been available for Mr. Latch, we cannot find that no material issue of facts exists as to whether SEPTA could have reasonably accommodated plaintiff after it disqualified him from driving. (Exhibits 1–5, 8, 21–24).

For all of these reasons, defendant's motion for summary judgment is denied as to Counts I and II of the plaintiff's complaint but granted as to Counts III and IV.