Robert KARALEWITZ, Plaintiff,

v.

UE & C–CATALYTIC, A SUBSIDIARY
OF RAYTHEON COMPANY, and Car-
penters Local 1301, jointly and several-
ly, Defendants.

No. 92–70593.

United States District Court,
E.D. Michigan, S.D.

Jan. 21, 1993.

Anthony A. Muraski, Ann Arbor, MI, for plaintiff.

William Sargent, Honigman Miller, George Kruszewski, Detroit, MI, for defendants.

## ORDER GRANTING DEFENDANT CARPENTERS LOCAL 1301'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On January 22, 1992, plaintiff filed his complaint in this matter. Defendants each filed answers to the complaint. On September 22, 1992, a stipulation and order were entered whereby the parties agreed to dismiss defendant United Brotherhood of Carpenters and Joiners of America ("UBCJA") from the action without prejudice. On September 25, 1992, a stipulation and order for amendment of the caption were filed whereby the parties agreed to dismiss count III of the complaint [the only count of plaintiff's complaint directed to defendant Detroit Edison Company], to dismiss defendant Detroit Edison Company without prejudice, and to delete the names of defendants Detroit Edison Company and UBCJA from the caption of the action. On October 26, 1992, defendant Carpenters Local 1301 filed this motion for summary judgment. Defendant UE & C–Catalytic also filed a motion for summary judgment October 26, 1992. Plaintiff filed a response November 13, 1992. Defendant Carpenters Local 1301 filed a reply November 24, 1992. On November 18, 1992, a stipulation and order were entered whereby the parties agreed to dismiss defendant UE & C–Catalytic from the action with prejudice.

### I. Facts

#### A. *The Underlying Incident*

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984). The court therefore states the facts alleged by the parties in a light most favorable to plaintiff's case.

Plaintiff Robert Karalewitz has been a member of defendant Carpenters Local 1301 ("Local 1301") for fifteen years. On or about April 29, 1991, plaintiff was employed by UE & C–Catalytic ("Catalytic"). Pursuant to an agreement between Catalytic and Detroit Edison, plaintiff was working for Catalytic as a night carpenter foreman at Detroit Edison's Fermi II nuclear power construction project in Monroe, Michigan.

Catalytic is party to the General Presidents' Project Maintenance Agreement ("GPPMA") with, *inter alia*, the United Brotherhood of Carpenters and Joiners of America ("UBCJA"). Defendant Local 1301 claims that it was not a party to any collective bargaining agreement with Detroit Edison or Catalytic. Neither party has presented evidence of the GPPMA itself in the form of an exhibit. However, defendant cites to a case, *Plumbers and Pipefitters Local 520 v. Nat'l Labor Relations Bd.*, 955 F.2d 744 (D.C.Cir.1992), which describes in detail the GPPMA and the relationship it forms among Catalytic, the international unions, and the affiliated locals of these unions:

> Catalytic's craft employees are covered by a collective bargaining agreement known as the General Presidents' Project Maintenance Agreement. [ftnt deleted] The GPPMA is negotiated on a nationwide basis; its signatories are fourteen International building trade unions and several engineering contractors, including Catalytic. With the exception of wage rates, certain benefit packages and hiring hall practices (all of which are negotiated by the Local unions), the national agreement covers most conditions of employment for craft employees in the designated bargaining units. The Local unions are not signatories to the GPPMA; however, each Local is affiliated with one of the signatory International unions. Thus, although the Locals

monitor compliance with the terms of the GPPMA, the affiliated International is the recognized bargaining representative for the employees in the designated local bargaining units.

*Id.*, 955 F.2d at 746–47. In this case, Local 1301 is affiliated with the UBCJA, which is the signatory the GPPMA.

On Monday, April 29, 1991, a co-worker of plaintiff William Wroblewski told plaintiff that he had some old drill bits that he had brought into work to give to plaintiff for plaintiff to use in his hobby work of stone carving. Plaintiff accepted the bits and put them in his pocket. On April 29, 1991, William Wroblewski contacted Mike Candela of the Fermi II security department to inform him that security should be on the lookout for a person fitting plaintiff's description who would be leaving the construction site with company property. Candela passed this information on to other security staff at a shift briefing.

As plaintiff was leaving work on April 30, 1991, he was stopped by security and searched. Security found the drill bits and a half-empty container of "super glue" in plaintiff's pocket.[1] Plaintiff's security clearance (which was required for entrance to the nuclear facility) was immediately terminated without any follow-up written notice and without a proper investigation.[2] Because the revocation of plaintiff's security clearance meant he was no longer able to enter the facility, plaintiff's employer, Catalytic, terminated plaintiff's employment on or about April 30, 1991. Witnesses later interviewed by J.L. Martin of the Quality Assurance department of the Nuclear Regulatory Commission corroborated plaintiff's continuing claim that he was "set up" by Wroblewski because Wroblewski had long harbored animosity towards plaintiff.

### B. *The Grievance Procedure*

Soon after his dismissal, plaintiff contacted Larry Barnett. Barnett had been appointed by the General President as union job site representative in accord with Article IX of the GPPMA, to represent all of the trades on the Fermi II project site.

The grievance procedure under the GPPMA, according to the court in *Plumbers*, cited *supra*, is as follows:

> The GPPMA establishes a four-step grievance and arbitration procedure for disputes arising under the contract. *See* GPPMA at 9–10. Step One of the process consists of a meeting between the aggrieved employee and/or representative from the Local union and the employee's immediate supervisor. If the grievance is not resolved it proceeds to Step Two, at which a representative of the Local and a representative of the affiliated International Union consult with the employer's labor relations manager. If Step Two is unsuccessful, the grievance is referred in Step Three to the General Presidents' Committee ("GPC"), which includes a representative of each of the International Unions that are signatories to the GPPMA (there are no employer representatives). At Step Three of the process, representatives from the employer and the International Union responsible for the grievance are permitted to make oral and written presentations to the GPC. If the GPC and the employer are unable to reach agreement as to the appropriate disposition of

1. The glue was given to plaintiff by another night carpenter foreman, George Gooch. Gooch had been working on a job using super glue and had a partial tube and two full tubes left over after the job was completed. Gooch returned two full tubes to the supply locker and gave the other tube to plaintiff *for disposal.* Gooch saw plaintiff put the glue into his pocket. Gooch stated during an investigation of the incident surrounding plaintiff's dismissal that plaintiff must have gone in and out of the protected area several times with the glue in his pocket because he had given plaintiff the glue a couple

of days before the security search on April 30, 1992.

2. The regulations in effect at the Fermi II facility at the time of this incident require that when an employee is given oral notification that his security clearance has been terminated, written notice will be provided. No follow-up written confirmation was provided. Despite plaintiff's claim that the drill bits were a gift from a co-worker, the security department did not interview any witnesses to verify plaintiff's defense prior to terminating his security clearance.

the grievance within ten days after the hearing, either the employer or the International may invoke Step Four of the process. *See id.*

*Plumbers*, 955 F.2d at 748.

According to defendant, Local 1301 played no role in appointing or directing Barnett in his duties as representative. Nevertheless, Barnett, and not Local 1301, assisted plaintiff with Step One of the grievance procedure; that is, with Barnett's assistance, plaintiff filed with Catalytic, on May 3, 1991, a grievance concerning his discharge. The grievance was denied by Catalytic representative Lanny South on May 4, 1991.

After his Step One grievance was denied, plaintiff contacted Ed Shepler, the financial secretary and business representative for Local 1301. Shepler assisted plaintiff in taking his grievance to Step Two. On May 28, 1991, the UBCJA assigned Leonard Zimmerman to be plaintiff's UBCJA representative. On July 9, 1991, a meeting constituting Step Two was held; attending were plaintiff, Shepler and Zimmerman from Local 1301 and UBCJA, respectively, and Lanny South and Bruce Uffelman, both of Catalytic. At the meeting, Uffelman, according to defendant, took the position that plaintiff had been caught stealing Detroit Edison property and that he was fired justifiably. Uffelman proposed a settlement that plaintiff be reviewed for rehire after six months, instead of the normal one year. Plaintiff refused to accept this settlement and told Zimmerman that he wanted to go to Step Three, which entails presentations to the General Presidents' Committee ("GPC") by Catalytic and by the UBCJA representative. At Step Three the local union representative is no longer involved. On July 12, 1991, Uffelman issued his answer to the grievance at Step Two, stating that the grievance was denied and that plaintiff would be entitled to review for possible rehire six months after his date of termination.

On July 24, 1991, Lewis Pugh of the UBCJA advanced plaintiff's grievance to Step Three. On August 27, 1991, the GPC determined that the grievance had been settled at Step II and was improperly before the committee. Notice of that decision was sent out on September 3, 1991.

Plaintiff commenced this suit on January 22, 1992. Only Count II alleging breach of the duty of fair representation was directed at Local 1301, which is now the only defendant remaining in this case.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender*, 749 F.2d at 1210–11.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts

to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

Defendant Local 1301 asserts three arguments in its motion for summary judgment brief. First, Local 1301 claims it owed to plaintiff no duty of fair representation because it was not plaintiff's exclusive bargaining representative. Second, Local 1301 argues that plaintiff's claim is barred by a six-month statute of limitations. And third, Local 1301 claims that assuming, *arguendo*, that it owed to plaintiff a duty of fair representation, it did not breach that duty because plaintiff cannot show that defendant's representation was grossly negligent, carried out in bad faith or was the "but for" cause of plaintiff's injuries.

### A. *Local 1301's Duty of Fair Representation*

■ To defendant's first argument, plaintiff makes the bare statement that defendant Local 1301 was in fact plaintiff's exclusive bargaining agent. Plaintiff further claims that even assuming, *arguendo*, that defendant Local 1301 was not technically the exclusive agent, plaintiff justifiably believed him to be his exclusive agent. For the following reasons, the court finds that defendant did owe plaintiff a duty of fair representation.

Defendant Local 1301 claims that it is an entity entirely separate and distinct from the UBCJA and that since the GPPMA was signed only by the UBCJA, Local 1301 cannot be held to have owed to plaintiff any duty of fair representation. This argument is disingenuous. Although the UBCJA is the signatory to the agreement with Catalytic, the agreement clearly binds Local 1301 to assist employees in Steps One and Two of the grievance procedure. *Plumbers*, 955 F.2d at 748.

Defendant Local 1301 also argues that in order for there to exist any duty of fair representation, a union must be the exclusive bargaining representative of the complaining employee. Defendant claims that since plaintiff had two representatives, that is, Local 1301 and the UBCJA, it was not the *exclusive* representative. This argument also is disingenuous. If the court were to find that Local 1301 had no duty to fairly represent plaintiff because there was technically more than one representing group, it would be required also to find that the UBCJA was not plaintiff's exclusive bargaining representative, thus leaving plaintiff with no power to bargain for himself and no power to enforce the union's contractual obligation to bargain on his behalf.

The fact is that the UBCJA and its affiliate Local 1301 had exclusive bargaining power as to any grievances plaintiff had

against his employer. As defendant states in its brief at 4, "In its most modern formulation, the duty of fair representation

exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'

*Del Costello v. Teamsters,* 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 2291 n. 14, 76 L.Ed.2d 476 (1983), quoting in part *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967).

The purpose of the GPPMA and of its being signed only by the larger national and international unions was not to disturb the relation between an employee and his or her union but rather "to take account of the unique circumstances facing a contractor like Catalytic, which operate a number of temporary projects at various work sites." *Plumbers,* 955 F.2d at 746 n. 2. Thus, the locals were not made direct parties to the agreement because of the nature of Catalytic's business; execution of an agreement by every local union with which Catalytic deals would be unduly cumbersome.

Furthermore, the purpose of the GPPMA clearly was not to replace entirely the local affiliates with the larger national and international unions; this is evidenced by the fact that, by the terms of the GPPMA, the locals are included as an integral part of the grievance procedure up to the point the grievance procedure moves to Step Three and goes before the GPC in Washington, D.C. The fact that the local is excluded at Step Three appears to be merely a matter of convenience and jurisdiction; that is, one

function of the local is to assist with grievances while they are proceeding at the local level. Once the grievance procedure passes outside the locale, the national or international union group assumes sole responsibility.

Thus, the court finds that defendant Local 1301 was a subdivision of the single labor organization, that is the UBCJA, that had the exclusive power to bargain on plaintiff's behalf. As such, defendant Local 1301 did have a duty to fairly represent plaintiff in a grievance procedure instituted against plaintiff's employer.

### B. *The Statute of Limitations*

■ Defendant's second argument also fails. In *Del Costello,* cited *supra,* the United States Supreme Court established that section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), which provides for a six-month statute of limitations, is applicable to claims brought by employees against a union for breach of the duty of fair representation. Clearly, plaintiff's claim is governed by the rule in *Del Costello.* The issue in this case is when does the cause of action accrue.

■ Defendant Local 1301 claims that the cause of action against it accrued with the final decision at Step Two in the grievance procedure, since that was the last step at which Local 1301 had any involvement in the proceedings. The court disagrees. A suit under 29 U.S.C. § 185 may not be instituted before union grievance procedures have been *completely exhausted,* unless resort to such procedures is demonstrably futile. *Monroe v. Int'l Union, UAW, et al.,* 723 F.2d 22, 24 (6th Cir.1983). Thus, the court finds that plaintiff's cause of action did not accrue until September 3, 1991; that is, the date on which the GPC issued written notice that no Step Three procedure would be permitted. It was not until this time that plaintiff could have known with certainty that his union grievance procedures had been fully exhausted.

### C. *Whether Local 1301 Breached Its Duty of Fair Representation*

■ Defendant's third argument is that plaintiff cannot prove that defendant

breached its duty of fair representation. The court finds, *infra*, that the issue of whether defendant's handling of plaintiff's grievance constituted a breach of its duty of fair representation is an issue of material fact. Nevertheless, in order to show that defendant's breach of its duty of fair representation was the cause of plaintiff's injury, plaintiff must also prove the second element of his claim; that is, that the employer breached the collective bargaining agreement.[3] Without proof that the employer wronged plaintiff, it is impossible for plaintiff to argue that defendant could have rectified such wrong had it not breached its duty of fair representation.

 Whether an employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: first, that the employer's action violated the terms of the collective bargaining agreement, and second, that the union breached its duty of fair representation. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *Del Costello*, 462 U.S. at 163–167, 103 S.Ct. at 2290–92. The duty of fair representation requires a union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Terry*, 494 U.S. at 563, 110 S.Ct. at 1343. A union breaches its duty of fair representation when it arbitrarily ignores a meritorious grievance or processes it in a perfunctory fashion. *Hines v. Local Union No. 377, Chauffeurs, Teamsters, Warehousemen & Helpers, et al.*, 506 F.2d 1153, 1156 (6th

Cir.1974), citing *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917.

Defendant Local 1301 has presented no facts or evidence relating what steps it took on plaintiff's behalf. In the description of the Step Two meeting, defendant discusses the stance that plaintiff's employer took but makes no allegations of fact as to its own conduct. Defendant's Brief at 3. The results of the meeting were unfavorable to plaintiff. Defendant's argument on this issue centers on the notion that there was nothing it could do for plaintiff because plaintiff was fired before the union was notified of plaintiff's grievance and because, in any event, in defendant's opinion, plaintiff was guilty of stealing. Defendant's brief at 10. Such argument hardly is the voice of an advocate representing plaintiff's interests.

From the facts it is clear that plaintiff could not have notified defendant of his grievance prior to his termination because he had no grievance until he was terminated. And, in light of the evidence supporting plaintiff's version of the events surrounding his dismissal, defendant's argument that plaintiff was guilty of stealing appears unjustified. The court, without any evidence at all of what defendant did for plaintiff, cannot conclude that Local 1301 did anything more than act in a perfunctory fashion by arranging the meeting and appearing at it.

However, plaintiff must still present evidence to support a finding that there remains a genuine issue of material fact as to the second element of plaintiff's claim; that is, whether the employer breached the collective bargaining agreement.[4] While

---

3. Plaintiff's counsel admitted at the hearing that the employer had not breached the collective bargaining agreement. Counsel argued, however, that plaintiff's claim was not a "hybrid claim" but rather a claim only against the union for breach of the duty of fair representation. Plaintiff's counsel is misguided. The suit against the employer and the suit against the union are each based on different statutes; nevertheless, as the United States Supreme Court pointed out in *Del Costello*, 462 U.S. at 165, 103 S.Ct. at 2291, "... the two claims are inextricably interdependent." All such claims are "hybrid § 301/fair representation claim[s],

amounting to a 'direct challenge to the private settlement of disputes under the [collective bargaining agreement].'" *Id.*, citing *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981).

4. In its reply to plaintiff's response brief, defendant Local 1301 makes the argument that since plaintiff's claim against Catalytic for breach of employment contract was dismissed with prejudice, plaintiff is precluded from raising the issue of whether Catalytic breached the collective bargaining agreement. Generally, issue preclusion in a case between a party to the previous

plaintiff has provided sufficient evidence to show that there is a genuine issue of material fact as to whether the revocation of plaintiff's security clearance was justified, plaintiff has failed to show that it was plaintiff's employer that made the decision to revoke his clearance; therefore, plaintiff has failed to show that his employer breached the collective bargaining agreement.

The decision to terminate plaintiff's security clearance was made by Detroit Edison, not by Catalytic, plaintiff's employer, and plaintiff has failed to show what, if anything, his employer could have done to reverse Detroit Edison's decision. Plaintiff therefore has failed to present any evidence tending to prove that Catalytic breached the collective bargaining agreement; in fact, plaintiff's counsel stated at the December 16, 1992 hearing on this matter that the case against Catalytic was voluntarily dismissed because plaintiff's counsel had reached the conclusion that Catalytic had not breached the agreement and was not responsible for plaintiff's injuries.[5] Catalytic in fact had no recourse but to fire plaintiff because without his security clearance plaintiff was unable to enter the premises of the Fermi II plant and therefore was unable to perform his job. Under these circumstances, plaintiff's termination resulted not from any breach by Catalytic of the collective bargaining agreement but rather from the unilateral decision of Detroit Edison to no longer allow plaintiff to enter upon its premises, a matter over which Catalytic had no control or authority whatsoever.

For the foregoing reasons, the court finds that there exists no genuine issue of material fact as to the second and necessary element of plaintiff's claim. Therefore, summary judgment in defendant's favor is appropriate.

### ORDER

Therefore, it is hereby ORDERED that defendant Local 1301's motion for summary judgment is GRANTED.

SO ORDERED.

litigation in which the issue was allegedly decided and a new party is granted only when the parties in the previous litigation had an opportunity to fully litigate the issue. Restatement (Second) of Judgments § 27 (1982–88). In this case, plaintiff did not have an opportunity to fully litigate the issue. However, the court need not decide whether issue preclusion applies in this case because plaintiff has admitted that, in plaintiff's view, the employer did not breach the collective bargaining agreement.

5. Plaintiff's counsel stated in oral argument that plaintiff is suing Detroit Edison in state court for negligence.