# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HOSSEIN ZEINALI,
        *Plaintiff-Appellant,*

v.

RAYTHEON COMPANY; DOES 1
THROUGH 25, INCLUSIVE,
        *Defendant-Appellee.*

No. 09-56283

D.C. No.
3:07-cv-01852-
MMA

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
November 4, 2010—Pasadena, California

Filed April 4, 2011

Before: Johnnie B. Rawlinson and Milan D. Smith, Jr.,
Circuit Judges, and Robert Clive Jones, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Robert Clive Jones, United States District Judge for the District of Nevada, sitting by designation.

## COUNSEL

Ray Keramati, EMLS, P.C., San Diego, California, for the plaintiff-appellant.

John S. Adler (argued), Henry D. Lederman, and Lara K. Strauss, Littler Mendelson, P.C., San Diego, California, for the defendant-appellee.

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellant Hossein Zeinali, who is of Iranian descent, was employed by Defendant-Appellee Raytheon Company for approximately four years. He alleges, inter alia, that Raytheon violated the California Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12940 *et seq.*, by terminating him on the basis of his race and national origin after he was denied a security clearance by the Department of Defense.[1] Raytheon contends that (1) per *Department of the Navy v. Egan*, 484 U.S. 518 (1988), federal courts lack jurisdiction to decide discrimination cases involving security clearance decisions, and (2) Zeinali has not introduced any evidence to satisfy his burdens under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and *Guz v. Bechtel National, Inc.*, 8 P.3d 1089, 1113-14 (Cal. 2000).

We hold that we have jurisdiction to adjudicate Zeinali's discriminatory termination claim, as he does not dispute the merits of the executive branch's decision to deny his security clearance application. Rather, he disputes the *bona fides* of Raytheon's professed security clearance requirement, and he introduces evidence showing that Raytheon retained similarly

---

[1]Zeinali's other causes of action and claims of error are addressed in a memorandum disposition filed contemporaneously with this opinion.

situated non-Iranian engineers who lacked security clearances. We reverse the district court and hold that Zeinali's discrimination claim may proceed.

## BACKGROUND

Raytheon hired Zeinali in November 2002 in the position of "Senior Multi Disciplined Engineer." Raytheon informed Zeinali that this position required him to obtain a "Secret"-level security clearance, and informed Zeinali that his continued employment was contingent on obtaining such clearance. Although Zeinali's initial request for an interim clearance was rejected, Raytheon retained him while a final clearance decision was pending.

In November 2004, Zeinali transferred to a different engineering position, "Senior Systems Engineer," which, according to Raytheon, also required a "Secret" clearance. Because he still lacked the clearance, Zeinali performed the role of cost account manager, which was "a financial oversight and record-keeping job" that did not require him to use classified information.

Following the November 2004 transfer, Zeinali received positive feedback regarding his job performance. In 2006, one of his supervisors gave him an "individual achievement award[ ]," and another supervisor, Richard Zohn, testified that Zeinali's performance improved that year. Nevertheless, Zeinali was transferred again in the fall of 2006, both because of his displeasure at not receiving a promotion and because of a dispute in which a program manager failed to inform him about a temporary budget change.

On September 26, 2006, the Department of Defense informed Zeinali's attorney that Zeinali's request for a security clearance had been denied by the Defense Office of Hearings and Appeals. The cover letter noted that Zeinali could not re-apply for at least one year. After Raytheon learned of

the denial, it conducted internal discussions regarding Zeinali's future with the company. Ultimately, the engineering department's manager, David Robinette, recommended that Zeinali be terminated. Raytheon fired Zeinali on November 7, 2006.

Robinette explained in his deposition that there were "multiple factors" motivating the decision to terminate Zeinali. Zeinali's "inability to obtain [a] security clearance was a prime factor," and was compounded by "the work forecast," which showed a lack of "long lived, . . . unclassified assignments," as well as "Zeinali's work performance and feedback . . . on [his] most recent work performance levels." Ultimately, though, Raytheon decided to terminate Zeinali because he did not obtain a clearance. Robinette stated that if Zeinali had received a clearance, he would not have been fired in spite of the declining work forecast, or his unfavorable job performance.

Zeinali generally agrees with this outline of events, but points to evidence that at least two non-Iranian engineers were retained while Zeinali was fired. Based on this evidence, he contends that he has satisfied his burdens under *McDonnell Douglas* and *Guz.*

The district court granted Raytheon's motion for summary judgment, concluding that it lacked subject matter jurisdiction "because [Zeinali's] claims are premised on the denial of his security clearance," and, in the alternative, that Zeinali's discrimination claim failed on the merits because he was unqualified for his position due to his lack of a security clearance.

## JURISDICTION AND STANDARD OF REVIEW

The district court's order granting Raytheon's motion for summary judgment is a final appealable order under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in

Zeinali's favor. *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010).

## DISCUSSION

### A.   Security Clearances and Judicial Review

**[1]** As a preliminary matter, Raytheon contends that we lack jurisdiction over Zeinali's discrimination claim because of our decision in *Brazil v. U.S. Department of the Navy*, 66 F.3d 193, 196 (9th Cir. 1995), which held that federal courts may not "review . . . security clearance decisions made by the Executive or his delegee . . . in the context of a Title VII discrimination action." For the reasons that follow, we disagree with Raytheon's expansive reading of *Brazil*.

**[2]** The rule stated in *Brazil* was drawn from the Supreme Court's holding in *Department of the Navy v. Egan*, 484 U.S. 518 (1988), that employment decisions based on the executive branch's security clearance decisions are not reviewable by the administrative agency that adjudicates civil service disputes. The plaintiff in *Egan* was a civilian employee involved in maintaining a nuclear submarine, a job which required him to possess a security clearance. *Id.* at 520. After his security clearance request was denied, he was removed from his position. *Id.* at 521-22. He appealed this employment decision to the Merit Systems Protection Board, an administrative agency which reviews whether government agencies have adequate cause to terminate employees. *Id.* at 522, 530-31 (citing 5 U.S.C. §§ 7513, 7701). The dispute, as ultimately presented to the Supreme Court, was whether the Board had the authority to "examine the merits of the security-clearance denial . . . ." *Id.* at 526.

The Court held that "the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* at 527. "[T]he President[,] as

head of the Executive Branch and as Commander in Chief," has "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information . . . ." *Id.* The executive's decision to grant or deny a security clearance requires the type of "[p]redictive judgment" that "must be made by those with the necessary expertise in protecting classified information." *Id.* at 529. Thus, "[f]or reasons too obvious to call for enlarged discussion, the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Id.* (alteration, citation, and internal quotation marks omitted). Accordingly, the Court concluded that the Merit Systems Protection Board, as an "outside nonexpert body," could not "review the substance of such a judgment . . . ." *Id.*

We first examined *Egan* at length in *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990), where the Department of Defense had revoked the plaintiff's security clearance on the grounds that she was a national security risk. *Id.* at 1400. The plaintiff, who worked for a private contractor, filed suit against the United States, the Secretary of Defense, and the Director of the Department of Defense Legal Services Agency, "seeking an injunction against the revocation of her security clearance," on the ground that the Department of Defense's decision violated her constitutional "rights to procedural and substantive due process." *Id.* We explained that although *Egan*'s holding was confined to the Merit Systems Protection Board, "[t]he logic of that decision precludes *judicial* review as well." *Id.* at 1401 (emphasis added). "When it comes to security matters, a federal court is 'an outside nonexpert body.' We have no more business reviewing the merits of a decision to grant or revoke a security clearance than does the [Merit Systems Protection Board]." *Id.* (quoting *Egan*, 484 U.S. at 529). We noted that "[a]lthough Dorfmont fash-

ions her claims as due process challenges," her arguments were in fact "attacks on the merits of the decision to lift her security clearance." *Id.* Accordingly, we held that "the district court has no authority to review" these challenges to the merits of the security clearance decision. *Id.* at 1402.[2]

Following *Dorfmont*, we issued the decision at the heart of Raytheon's current defense. In *Brazil*, we held that a plaintiff is barred from bringing a Title VII employment discrimination claim to challenge an allegedly discriminatory security clearance decision. Plaintiff Brazil, who was a civilian employee stationed on a nuclear-equipped naval ship, was required to hold a security clearance as a condition of his employment. 66 F.3d at 195 & n.1. Based on Brazil's "disciplinary and interpersonal problems," the ship's captain recommended that the Navy revoke Brazil's security clearance. *Id.* at 195. Brazil then instituted Title VII proceedings, alleging that the captain had discriminated against him on the basis of race by recommending that his clearance be revoked. *Id.* We held that Brazil was barred under *Egan* from challenging the Navy's security clearance decision. *Id.* at 196-97.[3]

We began our analysis by noting that "*Egan* prohibited . . . outside administrative board review of security clearance decisions," and "*Dorfmont* extended [*Egan*'s] bar to judicial review." *Id.* at 196. Thus, "[a]lthough Brazil's circumstances may be compelling, he asks the court to do exactly what *Egan* and *Dorfmont* forbid"—namely, for "the court to perform

---

[2]The plaintiff also raised two arguments that did not implicate the merits of the security clearance decision, and we held that she failed to state a colorable claim that her constitutional due process rights had been harmed. *Id.* at 1403.

[3]We also held that Brazil was barred from bringing a constitutional challenge under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), because "Title VII 'provides the exclusive judicial remedy for claims of discrimination in federal employment.' " *Brazil*, 66 F.3d at 197 (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)).

some review of the merits of the security clearance decision." *Id.* Brazil contended, however, that the "Title VII analysis does not involve a review of the merits because it does not require the court to determine whether the Navy's reasons for revoking his clearance were valid; it merely requires a determination of whether the proffered reasons were the actual reasons." *Id.* at 197. We disagreed because "[t]he more valid a reason appears upon evaluation, the less likely a court will be to find that reason pretextual; the converse is also true." *Id.* Thus, under the second step of the *McDonnell Douglas* burden-shifting framework, "[i]t is impossible for the court to" determine "whether the Navy's proffered reasons were legitimate without evaluating their merits." *Id.* We also explained that, even if the second step were satisfied, "it is very likely to be impossible for [the court] to proceed to step three and determine whether the given reasons were mere pretext without considering their merits." *Id.* Ultimately, we concluded that "the merit of such decisions simply cannot be wholly divorced from a determination of whether they are legitimate or pretextual." *Id.*

In the fifteen years following our decision in *Brazil*, we have not discussed the *Egan-Dorfmont-Brazil* line of cases in a precedential opinion. Raytheon asks us to read these cases broadly, arguing that the logic of "*Egan* bars discrimination and wrongful termination claims where, as here, the denial of a security clearance plays a central role," and that under *Egan* and its progeny, if "the denial of a security clearance is central to the defense, the court lacks jurisdiction and the claims must be dismissed." Zeinali counters by arguing that "courts do have jurisdiction to consider questions that do not involve the merits of the security clearance decision itself, such as whether in fact clearance was denied, . . . whether transfer to a nonsensitive position may be feasible[,] . . . [and] 'whether the security clearance was a requirement for the job and thus its denial was an appropriate cause for dismissal.' " (Alter-

ations and citation omitted, quoting *Jamil v. Sec'y, Dep't of Def.*, 910 F.2d 1203, 1206 (4th Cir. 1990).[4])

**[3]** We conclude that Zeinali has the better argument. The core holdings of *Egan*, *Dorfmont*, and *Brazil* are that federal courts may not review the merits of the executive's decision to grant or deny a security clearance. *See, e.g.*, *Brazil*, 66 F.3d at 196-97. In each of those three cases, the plaintiff (1) brought suit against the government agency responsible for the security clearance determination, and (2) directly challenged the agency's decision to deny or revoke a security clearance. None of these cases held that federal courts lack jurisdiction over employment discrimination claims like the ones in this lawsuit, which are brought against a private employer who was not responsible for the executive's security clearance decision.

**[4]** The fundamental logic of *Brazil* is that in an employment discrimination claim *against the agency that made* the security clearance decision, the second and third steps of the *McDonnell Douglas* framework necessarily require an inquiry into the defendant's proffered reasons for the adverse employment decision. *Id.* at 197. Raytheon's proposed approach is particularly inappropriate in cases brought against private employers, because such defendants are rarely responsible for (or even substantially involved in) the government's security clearance decisions. But if the plaintiff sues a defendant for allegedly discriminatory conduct that is merely connected to the government's security clearance decision, the concerns of *Egan* are not necessarily implicated. We are therefore persuaded by the reasoning of the Third Circuit that federal

---

[4]We note that the case quoted by Zeinali is not particularly helpful to his cause, as that decision merely "reserv[ed] [the] 'question of whether *Egan* precludes courts from reviewing security clearance decisions' for Title VII discrimination." *Guillot v. Garrett*, 970 F.2d 1320, 1324 n.9 (4th Cir. 1992) (quoting *Jamil*, 910 F.2d at 1207). A subsequent case from that circuit answered this question in the negative. *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996).

courts have jurisdiction to decide claims that "do[ ] not neces-
sarily require consideration of the merits of a security clear-
ance decision," as long as they remain vigilant not to
"question the motivation behind the decision to deny [the
plaintiff's] security clearance." *Makky v. Chertoff*, 541 F.3d
205, 213 (3d Cir. 2008).[5]

We have found no case in which a court has ever adopted
a bright-line rule as broad as the one suggested by Raytheon.
Raytheon's approach would essentially immunize government
contractors from any liability in cases involving employees
whose security clearances are revoked or denied. Tellingly,
out of the numerous circuit court cases refusing to exercise
jurisdiction over security clearance-related claims,[6] only two

---

[5]Our sister circuits have adopted a similar approach and have held that
various types of security clearance-related claims are justiciable. The Fed-
eral Circuit (which reviews the decisions of the Merit Systems Protection
Board, and accordingly has issued a number of opinions on this issue) has
consistently read *Egan* as holding that "the Board may determine"—and
a court may review—"whether a security clearance was denied, whether
the security clearance was a requirement of the appellant's position, and
whether the procedures set forth in [the applicable statute] were followed
. . . ." *Romero v. Dep't of Def.*, 527 F.3d 1324, 1328 (Fed. Cir. 2008)
(quoting *Hesse v. Dep't of State*, 217 F.3d 1372, 1376 (Fed. Cir. 2000)).
This approach is supported by the text of Egan itself, which noted that the
parties agreed that the Board could review "the fact of denial, . . . the posi-
tion's requirement of security clearance, and . . . the satisfactory provision
of the requisite procedural protections[.]" *Egan*, 484 U.S. at 526. Simi-
larly, other circuits have exercised jurisdiction over security clearance-
related claims premised on a mixed-motive theory of discrimination,
*Makky*, 541 F.3d at 213, a defendant agency's failure to follow its own
regulations, *Duane v. U.S. Dep't of Def.*, 275 F.3d 988, 993 (10th Cir.
2002); *Stehney v. Perry*, 101 F.3d 925, 934-35 (3d Cir. 1996); *Jamil*, 910
F.2d at 1208, and constitutional challenges to the defendant agency's
actions, *Stehney*, 101 F.3d at 936-37; *see also Ryan v. Reno*, 168 F.3d 520,
524 (D.C. Cir. 1999) (stating without holding that constitutional chal-
lenges are permissible); *Dorfmont*, 913 F.2d at 1402 (same).

[6]*E.g.*, *El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176, 186 (3d Cir.
2010); *Hill v. White*, 321 F.3d 1334, 1335-36 (11th Cir. 2003) (per
curiam); *Ryan*, 168 F.3d at 524; *Becerra*, 94 F.3d at 149; *Perez v. F.B.I.*,
71 F.3d 513, 514-15 (5th Cir. 1995) (per curiam).

published decisions involved private employers, and only one of these cases even discussed *Egan*.[7] In that case, *Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994), the plaintiff brought a *Bivens* action alleging that his employer Boeing caused him reputational harm, lost promotional opportunities, and mental distress from on-the-job harassment, all of which he suffered after Boeing refused to grant him access to the secure worksite where Air Force One was being assembled. *Id.* at 562. The court noted that Boeing's contract with the government "provided that the planes be constructed in a secured area into which only persons with access clearance could enter." *Id.* at 560. The contracts also provided that only the Air Force could grant "unescorted access" clearances, but allowed Boeing to issue "escorted access" clearances. *Id.* The contracts also required Boeing to use specific criteria to determine whether an employee could receive such clearances. *Id.* The court held that, because the contract mandated the security clearance requirements that allegedly caused the plaintiff's injury, *Egan* applied to bar the plaintiff's claims. *Id.* at 565-66. The court acknowledged that its conclusion was somewhat unusual because the case involved a private

---

[7]The other published case involving a private employer, *Blankenship v. Martin Marietta Energy Sys. Inc.*, 83 F.3d 153 (6th Cir. 1996), is discussed *infra*, along with a similar unpublished case, *Strong v. Orkand Corp.*, 83 F. App'x 751 (6th Cir. 2003), which may be cited under Sixth Circuit rules, *see* 6th Cir. R. 28(f) ("Citation of unpublished opinions is permitted"). In both cases, the court exercised jurisdiction over the plaintiff's employment discrimination claims.

We have also found a number of cases (all decided after *Egan*) in which district courts exercised jurisdiction over employment discrimination claims involving plaintiffs who were terminated on account of their federal security clearance status. *See, e.g.*, *Fields v. Aramark Facility Servs., Inc.*, 240 F. Supp. 2d 453, 453-54 (D. Md. 2003); *Pascouau v. Martin Marietta Corp.*, 994 F. Supp. 1276, 1282 (D. Colo. 1998); *McCoy v. Pa. Power & Light Co.*, 933 F. Supp. 438, 443-44 (M.D. Pa. 1996); *McDaniel v. AlliedSignal, Inc.*, 896 F. Supp. 1482, 1491 (W.D. Mo. 1995); *Walker v. Corr. Med. Sys.*, 886 F. Supp. 515, 519, 523 (W.D. Pa. 1995); *Karalewitz v. UE & C-Catalytic*, 811 F. Supp. 311, 313, 318 (E.D. Mich. 1993).

employer, but held that the result was warranted under the particular facts at issue:

> To be sure, the case before us involves a private party rather than a government agency. However, Boeing's limited authority to grant or deny escorted access clearance derived solely from its contract with the Air Force. Boeing's authority was thus delegated to it by the Air Force, and hence by the Executive Branch. We see no compelling reason to treat the security clearance decision by Boeing differently than the similar decision made by the Air Force. Both decisions represent the exercise of authority delegated by the Executive Branch and are entitled to appropriate deference by the federal courts. Therefore, we conclude that we may not review Boeing's action or that of the Air Force in denying [the plaintiff] access to the Air Force One area.

*Id.* at 566 (footnote and citations omitted).

[5] *Beattie* is, in many ways, the exception that proves the rule that private employers can rarely avail themselves of *Egan*'s jurisdictional bar. In employment discrimination suits against private employers, courts can generally avoid examining the merits of the government's security clearance decision. Raytheon's broad reading of *Egan* and *Brazil* is inappropriate in such cases.

[6] Here, Zeinali does not contend that the Department of Defense (or any other agent of the executive branch) improperly denied his application for a security clearance. Rather, Zeinali contends that Raytheon's security clearance requirement was not a bona fide job requirement,[8] and that Raytheon used the government's security clearance decision as a pretext

---

[8]Again, we note that the parties in *Egan* agreed that a job "position's requirement of security clearance" was reviewable. *Egan*, 484 U.S. at 526.

for terminating Zeinali in a discriminatory fashion. In order to review Zeinali's contentions in a full and fair manner, we need not examine the merits of the government's decision regarding Zeinali's security clearance. Rather, we need only examine the employment decisions made by Raytheon. *Egan* does not strip the courts of jurisdiction to make such determinations.

**[7]** Accordingly, we hold that *Egan* does not bar our review in this case. Because we need not inquire into the merits or the motivations "behind the decision to deny [the plaintiff's] security clearance," *Makky*, 541 F.3d at 213, the district court had jurisdiction under 28 U.S.C. § 1332(a)(1), and we have jurisdiction under 28 U.S.C. § 1291.

**B.   The Employment Discrimination Claim**

**[8]** As the parties' central point of contention involved the federal courts' exercise of jurisdiction, we will explain only briefly why Raytheon is not entitled to summary judgment. Zeinali's basic contention is that he has satisfied his summary judgment burden by introducing evidence that Raytheon terminated him while retaining at least two similarly situated non-Iranian engineers who lacked security clearances. The record and case law support Zeinali's position.

**[9]** " '[W]hen entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule.' " *Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011) (quoting *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001)). In order to defeat a defendant's motion for summary judgment on a discrimination claim:

> [T]he employee must first establish a prima facie case of discrimination. If he does, the employer must

articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Id.* at 934-35 (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)). Under California law, a prima facie case of discrimination requires the plaintiff to "provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 8 P.3d at 1113. In light of the similarities between FEHA and Title VII, courts routinely rely on both California and federal case law. *Id.*; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923 n.3 (9th Cir. 2000).

**[10]** There is no dispute that Zeinali was a member of a protected class based on his national origin (Iranian), and that he suffered an adverse employment action by being terminated. The parties contest whether Zeinali was qualified for his position and whether the circumstances of Raytheon's termination suggest a discriminatory motive. In this regard, Zeinali has satisfied his burden by identifying evidence that Raytheon's security clearance requirement was not a bona fide job requirement, and that Raytheon's reliance on the security clearance requirement was pretextual.

We note as a preliminary matter that it is undisputed that Raytheon has consistently said that Zeinali's positions required a security clearance. Raytheon's job listings, offer letter, post-hiring conduct, internal documentation, and deposition testimony, all suggest that Raytheon required its engi-

neers to hold security clearances. Were this the only evidence presented to us, we would likely agree with Raytheon's assertion that a plaintiff such as Zeinali cannot succeed on a discriminatory termination claim if he fails to meet basic job qualifications. The language of FEHA explicitly permits employers to take adverse employment actions "based upon a bona fide occupational qualification." Cal. Gov. Code § 12940. Thus, we suspect that the California courts would agree with the Third Circuit's observation that a surgeon cannot prevail on a discriminatory termination claim if he "never went to medical school." *Makky*, 541 F.3d at 215. Applying this common sense rule, the Third Circuit held that a Transportation Security Administration agent had not made a prima facie mixed-motive case (which, strictly speaking, was not governed by the *McDonnell Douglas* burden-shifting analysis, but is persuasive nonetheless) where his security clearance had been suspended and he did "not dispute that his position required him to have access to National Security Information." *Id.* at 216. Similarly, in a disability discrimination case, the Sixth Circuit affirmed summary judgment for a nuclear plant owner because it was undisputed "that without security clearance, a person could not satisfy the requirements of any job in the plant," and the defendant had "never retained an employee after the [Department of Energy] revoked the security clearance." *Blankenship v. Martin Marietta Energy Sys. Inc.*, 83 F.3d 153, 156 (6th Cir. 1996).

Despite these general rules, Zeinali introduces evidence that raises a triable dispute regarding whether a security clearance was in fact a "bona fide occupational qualification" for Raytheon engineers. Cal. Gov. Code § 12940. In his deposition, Zeinali stated that two other individuals in professional or engineering positions in San Diego lacked security clearances. Raytheon's designated agents testified that a software engineer had his security clearance revoked for national security reasons and an engineering section manager had his clearance revoked for financial reasons. Neither of these employees were Iranian or Middle Eastern, and they contin-

ued to work for at least four years between the revocation of their clearances and the time of the Raytheon deposition.

**[11]** In light of the fact that Raytheon retained multiple non-Iranian engineers after their security clearances were revoked, Zeinali has raised triable disputes regarding (1) whether security clearances were a bona fide requirement for Raytheon engineers, and (2) whether Raytheon's central purported reason for terminating him (his lack of a security clearance) was pretextual. The Supreme Court's *McDonnell Douglas* opinion contains a salient observation about pretext: "Especially relevant to such a showing [of pretext] would be evidence that white employees involved in acts against [the employer] of comparable seriousness to the [plaintiff's disruptive protesting activities] were nevertheless retained or rehired. [An employer] may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races." *McDonnell Douglas*, 411 U.S. at 804. Analogously, in the present case, Raytheon would certainly be justified in firing employees who lack security clearances, "but only if this criterion is applied alike to members of all races." *Id.*; *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (holding that pretext is shown if other employees with similar qualifications are treated more favorably).

Raytheon contends that the other engineers who lacked clearances are not similarly situated to Zeinali because their clearances were revoked, whereas Zeinali's clearance was denied. We have explained that "individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Raytheon presents no evidence or analogous legal authority to explain how a clearance "revocation" is *materially* different from a clearance "denial."

To sustain the purported distinction between security clearance "revocations" and "denials," Raytheon relies on *David-*

*son v. Lockheed Martin*, an unpublished case from the Eastern District of Tennessee. *See Davidson v. Lockheed Martin Energy Sys., Inc.*, No. 3:06-CV-45, 2007 WL 1231686 (E.D. Tenn. Apr. 26, 2007). The plaintiff in *Davidson* had been a private security guard at a nuclear facility, but was fired after the Department of Energy terminated her security clearance. *Id.* at *1-2. She argued that certain "white employees were treated more favorably" because they were retained after they lost their security clearances. *Id.* at *7. The court concluded, however, that these white employees were not similarly situated to the plaintiff because their clearances had been *suspended* whereas the plaintiff's clearance had been *terminated*. *Id.* at *7-8. The court explained:

> there is an important difference between the *termination* of a clearance and the *suspension* of a clearance. If an individual's clearance is *suspended*, [the company] continues to employ the individual but assigns the individual to a position not requiring a clearance pending [the Department of Energy's] decision whether to reinstate or to terminate the individual's clearance. If the individual's *suspended* clearance is later reinstated, the individual's employment is continued. But if the individual's clearance is *terminated*, the individual's employment is terminated.

*Id.* at *3. The court held that the plaintiff's discrimination claim failed as a matter of law because the plaintiff was treated similarly to the two other employees whose clearances had been terminated, and was not similarly situated to the employees who had been retained while their clearances were suspended. *Id.* at *7-8.[9]

---

[9]Another case cited by Raytheon, *Strong v. Orkand Corp.*, is similar. There, the plaintiff failed to show that he had been treated in a disparate manner, as the defendant took an "identical action . . . against [the plaintiff] for his inability to obtain security clearance" as it did against the plaintiff's similarly situated co-worker. 83 F. App'x at 753.

**[12]** Unlike the defendant in *Davidson*, Raytheon has not identified any legal or factual distinction between Zeinali's clearance *denial* and the two non-Iranian engineers' clearance *revocations*. Absent any evidence from Raytheon establishing that the two non-Iranian engineers' clearance revocations were *materially* different from Zeinali's clearance denial, Raytheon's reliance on *Davidson* is unavailing. Zeinali has introduced sufficient evidence from which a reasonable fact-finder could conclude that Raytheon applied its security clearance policy in a discriminatory manner.

## CONCLUSION

We conclude that, even after *Egan*, federal courts have jurisdiction over employment discrimination claims in which the plaintiff does not dispute the merits of the government's security clearance decision. Here, the record shows that two non-Iranian engineers were able to retain their positions for over four years after having their clearances revoked. Raytheon's failure to apply its purported security clearance requirement in an evenhanded manner gives rise to an inference that its requirement is pretext for discrimination. Accordingly, the judgment of the district court is

**REVERSED and REMANDED.**