# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 29, 2013

Lyle W. Cayce
Clerk

No. 12-20471

BOBBI-ANNE TOY,

Plaintiff–Appellant.

versus

ERIC H. HOLDER, JR.,
Attorney General, United States Department of Justice,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Bobbi-Anne Toy, a contract FBI employee, sued the Attorney General ("the government") under Title VII of the Civil Rights Act of 1964, alleging sex discrimination and retaliation. She claimed that the FBI had revoked her access to its offices as a result of discriminatory animus. The government moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)

No. 12-20471

and for summary judgment, arguing that the national security exception to Title VII precluded Toy's claims. The district court dismissed, and we affirm.

I.

For a Rule 12(b)(6) dismissal, we take plausible facts alleged in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Toy was employed by independent contractor DynCorp to work as a data and intelligence analyst at the FBI's regional office in Beaumont. While there, she received numerous commendations and positive reviews. She also applied for direct employment with the FBI and was given a conditional offer of employment.

Things changed, however, when the director of the Beaumont office was replaced by Brett Davis. Toy alleged that Davis was "abrasive," "had problems with women," and wished to fire her. Davis eventually wrote a memo in which he outlined various complaints regarding Toy, primarily that she had participated in undercover operations despite lacking approval to do so and had falsely held herself out as an FBI employee. The government's motion for summary judgment outlined additional complaints, including Toy's improper use of FBI computers to install software and purchase unapproved items, her use of other employees' passwords to access computers, and her alleged romantic involvement with the son of the target of an investigation.

Toy denied all of those allegations. Based on Davis's memo, however, Toy's direct supervisor revoked her access to the Beaumont office and purported to revoke her security clearance as well.

DynCorp then terminated Toy's employment. Her conditional offer of employment was revoked after individuals from the Beaumont office, including her direct supervisor and Davis, provided negative references and recommended that her background investigation be terminated. Toy filed a complaint with an

No. 12-20471

Equal Employment Opportunity Commission counselor and eventually sued.

## II.

We review dismissal under Rule 12(b)(6) *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[1]

## III.

Title VII makes it unlawful for an employer to engage in certain employment practices, which includes "discharg[ing] any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Toy claims that her building access revocation amounted to discharge and that it was motivated by her sex.

Title VII, however, provides an exception where employment actions are based on national-security considerations. Under subsection (g), it is not an unlawful employment practice

> for an employer to discharge any individual from any position . . . if—
>
> (1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See generally* 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.04[1][b] (3d ed. 2012).

No. 12-20471

(2) such individual has not fulfilled or has ceased to fulfill that requirement.

*Id*. § 2000e-2(g).

In addition to this explicit statutory exemption for cases of national security, the Executive Branch has broad power to determine whether to grant or revoke access to secure information. In *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988), the Court held that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." For this reason, courts may not review decisions to grant access to sensitive information made by the executive. *Id*. This maxim derives from the Constitution's grant of presidential authority, which includes "authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive Branch that will give that person access to such information." *Id*. at 527.

Though *Egan* arose in the context of the Merit Systems Protection Board, we have applied it in the context of Title VII. In *Perez v. F.B.I.*, 71 F.3d 513, 514–15 (5th Cir. 1995), we held that examination of "legitimacy and the possibly pretextual nature of the FBI's proffered reasons for revoking [an] employee's security clearance" in a Title VII challenge would be "an impermissible intrusion by the Judicial Branch into the authority of the Executive Branch over matters of national security." We therefore did not have jurisdiction to consider the Title VII claims. *Id*. at 515.[2]

The district court focused primarily on the constitutionally derived *Egan* national security exemption in holding that Toy's building-access revocation

---

[2] *See also Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999) ("[U]nder *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII.").

No. 12-20471

could not be examined by the court. That strategy follows the majority approach —it seems that no appellate court has addressed Title VII's explicit national-security exemption. Each previous case has revolved around some form of denial or revocation of a security clearance, which falls under *Egan* and is jurisdictional.[3]

*Egan*'s holding that security-clearance decisions could not be reviewed was premised on necessary "[p]redictive judgment[s]" that must be made in relation to security clearances and the "necessary expertise" that agencies have in making them. *Egan*, 484 U.S. at 529. The Navy had provided Egan with several layers of consideration and review related to his security clearance. That process, coupled with the necessity of the judgments and the agency's expertise, led the Court to conclude that it could not review the security decisions.

The district court concluded, and the government urges us to affirm, that a security clearance is essentially identical to building access and that other courts have expanded *Egan* beyond security clearances. The government cites *Brazil v. United States Department of Navy*, 66 F.3d 193 (9th Cir. 1995) as an example of that court's expanding the meaning of the national security exemption beyond security clearances to cover a separate certification program. That opinion, however, is unhelpful, because the court treated a certification program as a security clearance only because the parties had agreed to treat it as such.[4]

The government also cites *Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir. 1996), in which the court held that the instigation of an investigation of a security clearance, rather than revocation, was covered under *Egan*'s national-security exemption. The plaintiff had claimed that the investigation of his suita-

---

[3] *See, e.g., Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005) (analyzing a Tittle VII security exemption claim under *Egan* rather than subsection (g)).

[4] *Brazil*, 66 F.3d at 195 n. 1 (explaining that the court would "treat PRP certification and security clearance decisions as equivalent for purposes of this opinion").

bility for a security clearance was impermissibly retaliatory, but the court held that the investigation was tied to the clearance and thus was covered under *Egan*. *Id*. Again, that case is unhelpful because of the inextricable connection to security-clearance determinations.

Finally, the government cites *Beattie v. United States*, 949 F.2d 1092, 1095 (10th Cir. 1991), in which the plaintiff had been denied access to the Air Force One secured area and thereafter was terminated. The court did not decide whether revocation of access to the premises was akin to a revocation of a security clearance under *Egan*—it only hinted at that in *dictum*.[5]

None of the cases cited by the government is particularly persuasive. No court has extended *Egan* beyond security clearances, and we decline to do so. Security clearances are different from building access; security-clearance decisions are made by specialized groups of persons, charged with guarding access to secured information, who must make repeated decisions.[6] There is also significant process involved in granting security clearances,[7] the kind of process that allows agencies to make the deliberate, predictive judgments in which they specialize.

---

[5] The government offers one further case to support a broad reading of *Egan* to encompass revocation of building access. The government cites *Berry v. Conyers*, 692 F.3d 1223, 1226 (Fed. Cir. 2012), reh'g en banc granted, opinion vacated, 2013 WL 262509 (Fed. Cir. Jan. 24, 2013), which held that *Egan* applied not only to security clearances but also to determinations of "eligibility of an individual to occupy a sensitive position, which may not necessarily involve access to classified information." Because of the en banc rehearing, the government cannot derive support from *Conyers*.

[6] Security determinations in particular are delegated by the President to agency heads or their designees, not to any employee or supervisor in an agency. *See, e.g.*, Exec. Order No. 10,450, 18 Fed. Reg. 2489 (April 27, 1953) (making agency heads and their designees responsible for ensuring that employees act in the interests of national security); Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) (requiring the agency head or his designee to make a "determination of eligibility for access" to classified information).

[7] *See* Exec. Order No. 12,968, 60 Fed. Reg. 40245 § 5.2 (August 2, 1995) (describing process for review of denial or revocation of a security clearance).

No. 12-20471

That is not the case, as aptly demonstrated here, where building access is concerned. Building access may be revoked, as in this case, by a supervisor, someone who does not specialize in making security decisions. An FBI security clearance, on the other hand, may be granted or revoked only by the FBI's Security Division, a group that specializes in making security-clearance decisions and to which authority to make those decisions is explicitly delegated by the director.[8] A lack of oversight, process, and considered decision-making separates this case from *Egan*, which therefore does not bar Toy's suit.[9]

Subsection (g), however, does: Its plain language creates an exception to Title VII where granting "access to the premises" of a secure location is related to national security. 42 U.S.C. § 2000e-2(g). Access must be "subject to any requirement imposed in the interest of the national security . . . under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President." *Id*.

There is no doubt that "access to the premises" is at issue here. The question is whether that access is subject to any applicable statute or executive order

---

[8] This decision is in accord with *Rattigan v. Holder*, 689 F.3d 764, 768 (D.C. Cir. 2012), which somewhat limited *Egan's* scope. Rattigan, an FBI employee, sued under Title VII claiming that he was discriminated and retaliated against. His claim was based on a complaint made by the Office of International Operations ("OIO") to the FBI's Security Division. A co-worker had voiced concerns to the OIO, which then referred the matter to the Security Division. *Id*. at 766. Rattigan claimed that the colleague's complaint and its referral to the Security Division were not protected under *Egan*, and the court agreed. It held that *Egan* applies only to "security clearance-related decisions made by trained Security Division personnel and does not preclude all review of decisions by other FBI employees who merely report security concerns." *Id*. at 768. FBI "employees outside the Security Division are expected to refrain from making sensitive, predictive judgments and it is 'not their place' to make the kinds of decisions that *Egan* shields from review." *Id*.

[9] "[T]he lack of judicial review [of security clearance decisions] creates the potential for abuse by the agencies and bureaus employing them." *Perez*, 71 F.3d at 514 n. 6. That result is required by *Egan*, because "security clearance determinations are 'sensitive and inherently discretionary' exercises, entrusted by law to the Executive." *Id*. (quoting *Egan*, 484 U.S. at 527–29). That lack of judicial review and increased possibility of abuse are not required in the case of building-access decisions.

("EO") that administers a "national security program." As a matter of first impression, we interpret a "national security program" broadly to mean any set of regulations related to matters of national security. There must be a specific statute or EO, however, requiring or implementing such regulations.

The government points to EO 12829 establishing the National Industrial Security Program ("NISP"), which governs national security related to contractors. That EO broadly states that contractors shall be subject to the same security requirements as are members of the Executive Branch, and it directs that an implementation manual be written. The resulting manual requires that a procedure "be established for removal of the individual's authorization to enter the [secure] area upon reassignment, transfer or termination, or when the individual's PCL [personnel security clearance] is suspended or revoked." Operating Manual § 5-313(d).[10] The manual also repeatedly states that "[n]othing in this Manual affects the authority of the Head of an Agency to limit, deny, or revoke access to classified information." *Id*. § 1-105. The government points to an additional section that requires "contract employees" to "follow the security requirements of the host." *Id*. § 6-105.

The EO establishing the NISP creates a "national security program"—it directs agencies to take steps to control sensitive information. That program unquestionably applies to Toy, a contract employee. It and the operations manual together require agencies to ensure that contractors abide by security regulations applicable to employees and lays out concrete steps that must be taken.

A logical step related to that security program is revocation of a contract employee's building access. There is an abundance of security-related confidential information at FBI offices, and access to a building would mean access to that information. Moreover, access to the premises would allow access to com-

---

[10] National Industrial Security Program Operating Manual, February 28, 2006, available at http://www.dss.mil/documents/odaa/nispom2006-5220.pdf.

puter networks, which contain even more classified information, the release of which might be a threat to national security—the government contended in its motion to dismiss that Toy had accessed secure information on FBI computers using other employees' credentials.

The contract between DynCorp and the Department of Justice contemplated building access as a part of security arrangements; it makes clear that access to an office could be refused to a contract worker who acted contrary to the Department's guidelines. Even if the Beaumont office had asked for a revocation of Toy's security clearance, which would have invoked the protections of *Egan*, common sense dictates that the FBI be allowed to suspend building access to a person who allegedly committed grave security breaches during that process. This is explicitly contemplated by the operations manual produced pursuant to EO 12829.

A related security program not advanced by the government arises under EO 12968. which provides that agencies may "grant or deny, in their discretion, facility access approvals" where employees might be exposed to classified information inadvertently. 60 Fed. Reg. 40245 § 2.1(b)(1). That program again is a "national security program" insofar as it is designed to safeguard classified information in the interest of national security. It explicitly contemplates national security and entrusts to agencies the ability to grant or deny building access to government employees based on security considerations.

Because EO 12829 applies restrictions on employees to contract employees as well, EO 12968 applies to Toy—the agency has the ability to grant or deny access to facilities within its discretion based on considerations of national security. Thus, there are multiple relevant "national security programs" arising under EOs that relate to access to secured premises. Subsection (g) applies to Toy's building access revocation, and review is therefore barred.

No. 12-20471

IV.

In summary, subsection (g) creates a security exemption to Title VII where access is denied to a premise where secure information is kept. EOs 12829 and 12968 create security programs related to securing information, and the government advances numerous reasons for the revocation of Toy's access to the building where that information was kept, all of which are directly related to security breaches she allegedly committed. Toy therefore cannot be granted relief under Title VII. The judgment of dismissal is AFFIRMED.