# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2014

Lyle W. Cayce
Clerk

————

No. 13-30103

————

DOUG WELBORN, In His Official Capacity as Clerk of Court of Nineteenth Judicial District for the Parish of East Baton Rouge, Louisiana; MARK J. GRAFFEO, In His Official Capacity as Clerk of Court of the Eighth Judicial District for the Parish of West Baton Rouge, Louisiana; GERALD W HARRINGTON, In His Official Capacity as Clerk of Court of the Thirty-Third Judicial District for the Parish of Allen, Louisiana; KERMIT HART BOURQUE, In His Official Capacity as Clerk of Court of the Twenty-Third Judicial District for the Parish of Ascension, Louisiana; DARLENE LANDRY, In Her Official Capacity as Clerk of Court of the Twenty-Third Judicial District for the Parish of Assumption, Louisiana; ET AL,

Plaintiffs-Appellants

v.

BANK OF NEW YORK MELLON CORPORATION; BANK OF AMERICA; CITI MORTGAGE, INCORPORATED; GMAC RESIDENTIAL FUNDING CORPORATION; HSBC FINANCE CORPORATION; MERRILL LYNCH CREDIT CORPORATION; NATIONWIDE ADVANTAGE MORTGAGE COMPANY; SUNTRUST MORTGAGE, INCORPORATED; UNITED GUARANTY CORPORATION; WELLS FARGO BANK, N.A.; DEUTSCHE BANK, A.G.; U.S. BANK; J.P. MORGAN CHASE BANK, N.A.; HSBC BANK USA, N.A.; LASALLE BANK, N.A.,

Defendants-Appellees

————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-220

————

No. 13-30103
Consolidated with
No. 13-50080

_____

Consolidated with
No. 13-50080

EL PASO COUNTY TEXAS; CASS COUNTY, TEXAS; HIDALGO COUNTY TEXAS; KAUFMAN COUNTY TEXAS; NAVARRO COUNTY TEXAS; PANOLA COUNTY, TEXAS; RUSK COUNTY, TEXAS; SMITH COUNTY TEXAS; STARR COUNTY, TEXAS; WEBB COUNTY TEXAS; LAMAR COUNTY TEXAS,

                                        Plaintiffs-Appellants

v.

BANK OF AMERICA CORPORATION; CITIMORTGAGE, INCORPORATED; HSBC FINANCE CORPORATION; MERRILL LYNCH CREDIT CORPORATION; NATIONWIDE ADVANTAGE MORTGAGE COMPANY; SUNTRUST MORTGAGE, INCORPORATED; WASHINGTON MUTUAL BANK; WELLS FARGO BANK, N.A.; THE BANK OF NEW YORK MELLON; US BANK N.A.; JP MORGAN CHASE BANK, N.A.; HSBC BANK USA, N.A.; LASALLE BANK, N.A.; DEUTSCHE BANK TRUST COMPANY AMERICAS,

                                        Defendants-Appellees
                    _____

Appeal from the United States District Court
for the Western District of Texas
USDC No.  1:12-CV-705
                    _____

Before  STEWART,  Chief Judge,  and  GARZA and  SOUTHWICK,  Circuit Judges.

2

No. 13-30103
Consolidated with
No. 13-50080

PER CURIAM:*

The Plaintiffs-Appellants appeal from district court orders dismissing their civil RICO complaints. For the following reasons, we AFFIRM.

**I**

The Plaintiffs-Appellants in this consolidated appeal are County and Parish government bodies or officials responsible for maintaining local land recording records ("Land Recorders"). Their responsibilities include recording mortgages under the Louisiana and Texas recording statutes, and they assess fees for this public service. The Defendant-Appellees are banks, and other financial companies, that are members of the Mortgage Electronic Registration System, Inc. registration system ("MERS"). Under MERS, members can transfer interests to other members without formally assigning and re-recording the underlying mortgage in local offices. To achieve this, members list MERS as nominee or beneficiary on the mortgage or deed of trust initially recorded in a local office. Subsequent transfers among members, however, are tracked internally. The upshot is that MERS members will record mortgages in local offices less frequently. The Land Recorders allege that fraudulent statements about the legal effect of MERS—sufficient to constitute federal mail or wire fraud—caused fewer filings in their offices, which in turn injured them by decreasing fee revenues and damaging the general accuracy of the records.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

3

No. 13-30103
Consolidated with
No. 13-50080

The Land Recorders filed single-count complaints[1] against the MERS members under the civil provision of the RICO statute, 18 U.S.C. § 1964(c). The MERS members responded with motions to dismiss, arguing, *inter alia*, that the complaints failed to state a claim under FED. R. CIV. P. 12(b)(6).

The Louisiana district court dismissed on the theory that "it is inconsistent with legislative intent to allow the Plaintiffs to bring a RICO claim which seeks to enforce the [Trust Indenture Act of 1939, 15 U.S.C. § 77aaa, *et seq.* ("TIA")]." Eight days later, the Texas district court adopted this rationale and dismissed on the same grounds. According to the Land Recorders, the TIA was cited in the complaints as the purported source of a duty to record mortgages. The Land Recorders assert the TIA's sole purpose in the complaints was to establish but-for causation for the RICO claims. On appeal, they submit the district courts erred in determining they sought to "enforce" this statute.

Because we may affirm the district court on any grounds raised below and supported by the record, *see Raj v. Louisiana State University*, 714 F.3d 322, 330 (5th Cir. 2010), we do not determine whether the complaints sought to enforce the TIA, or whether this is permitted through civil RICO. Dismissal under Rule 12(b)(6) is proper because the complaints fail to adequately plead a RICO injury to the Land Recorders' "business or property."[2]

---

[1] The operative pleading documents are the Second Amended Complaint in No.13-30103, and the First Amended Complaint in No. 13-50080.

[2] We review a district court's dismissal under Rule 12(b)(6) de novo. *See Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013). At this stage, the court must accept "all well-pleaded facts as true," and it must view "those facts in the light most favorable to the plaintiff." *Id.* Under the *Iqbal* standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In short, 12(b)(6) is a test to determine if a legally cognizable claim for relief has been presented. *See generally* 5B CHARLES ALAN WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2013).

No. 13-30103
Consolidated with
No. 13-50080

## II

Under the civil RICO statute, "[a]ny person injured in his business or property by reason of a violation of section 1962" can sue for treble damages and fees. 18 U.S.C. § 1964(c). In short, a claim requires three elements: (1) a RICO violation under 18 U.S.C. § 1962; (2) an injury to any person's business or property; and (3) the injury must be "by reason of" the alleged RICO violation.

When a government sues under the civil RICO statute, the "business or property" element requires that the injury "refer to commercial interests or enterprises." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 (1972).[3] A government cannot claim damages for general injury to the economy or "to the Government's ability to carry out its functions." *Id.* at 265. Recovery is only authorized for "injuries suffered in its capacity as a consumer of goods and services." *Id.* Thus, the Land Recorders, as government entities and representatives, must establish that the "business or property" allegedly injured is not just the general economy or the government's ability to carry out governmental functions. It must be a commercial activity.[4]

---

[3] *Hawaii* is a Sherman Act case. However, the phrase "business or property" is interpreted coextensively in the antitrust and RICO contexts. *See Holmes v. SIPC*, 505 U.S. 258, 268 (1992).

[4] The Land Recorders seek to distinguish *Hawaii* by classifying its holding as limited to *parens patriae* suits and the potential for double recovery. We reject this characterization. Similarly, in *Town of West Hartford v. Operation Rescue*, 915 F.2d 92 (2d Cir. 1990), the Second Circuit rejected an attempt to read *Hawaii* in this narrow fashion, noting that the holding specifically refers to a government's "ability to carry out its functions." This is persuasive. Also, in *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341–42, the Court clarified that a governmental plaintiff can only recover for injury to business or property when it acts "as a party to a commercial transaction."

No. 13-30103
Consolidated with
No. 13-50080

The injuries alleged by the Land Recorders are the loss of recording fees and general damage to the integrity of the public records. These injuries do not arise from commercial activity, but rather from the provision of a public service—that is, from a governmental function. According to the Supreme Court of Texas, the state's recording system serves "to protect intending purchasers and encumbrancers . . . against the evils of secret grants and secret liens and the subsequent frauds attendant to them." *Ojeda de Toca v. Wise*, 748 S.W.2d 449 at 450–51 (Tex. 1988). Similarly, the purpose of the Louisiana recording statute is to ensure stability of land titles. *See Camel v. Waller*, 526 So.2d 1086, 1089 (La. 1988). These statutes are grounded on the public policy of providing notice of title. *See Camel*, 526 So.2d at 1089; *Wise*, 748 S.W.2d at 450–51. The recording systems were not created to serve a revenue-generating function for the states, and, based on the public policy concerns quoted above, it is not accurate to cast the recording systems as commercial. Rather, they serve a governmental function.[5]

---

[5] The Land Recorders claim the "business of collecting fees to record mortgage transfers and maintain public records is commercial, because it is the same type of business in which MERS engages." While there are similarities between the two systems, namely that they both track mortgage rights, this argument ignores key distinctions between them. First, the public offices are open to any person or entity for recording and researching interests, whereas MERS is a closed-system for its member institutions. Second, the Land Recorders implement the state recording statutes, which, as described above, are rooted in public policy concerns. MERS, on the other hand, exists to create efficiencies, reduce costs, and otherwise facilitate business activity for its member institutions. The Land Recorders are not involved in commercial activity sufficient for a RICO injury, even though none dispute that MERS is commercial.

Additionally, *Republic of Argentina v. Weltover,* 504 U.S. 607 (1992), relied upon by the Land Recorders to establish that recording is a commercial activity, is inapposite. The *Weltover* court construed the term "commercial activity" in the specific context of the Foreign Sovereign Immunities Act, which contains language establishing that "the commercial character of an act is to be determined by reference to its nature rather than its purpose." 28 U.S.C. § 1603(d). This language, at the core of *Weltover*, does not exist in the civil RICO context. Accordingly, we evaluate the commercial nature of this alleged RICO injury in light of both the nature and purpose of the public recording systems.

No. 13-30103
Consolidated with
No. 13-50080

Because the Land Recorders cannot allege an "injury to business or property" under RICO, they have not stated a legally cognizable claim sufficient to survive Rule 12(b)(6).[6]

The judgment of the district court is AFFIRMED.

---

[6] This holding can also be framed in terms of "statutory standing." *See Sedima S.P.R.L. v. Inrex Co.*, 473 U.S. 479, 496 (1985), ("[T]he plaintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation.").