# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 15-60179
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2015

Lyle W. Cayce
Clerk

———————

KYRT M. WENTZELL; RHONDA E. WENTZELL,

Plaintiffs - Appellants

v.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, successor by merger to Chase Home Finance, LLC, successor by merger to Chase Manhattan Mortgage Corporation,

Defendant - Appellee

———————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CV-182

———————

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of Defendant-Appellee's motion to dismiss the Plaintiffs-Appellants' complaint for failure to state a claim. Because the complaint fails to state a plausible claim for relief, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60179

I.

On October 19, 2001, Plaintiffs-Appellants Kyrt Wentzell and Rhonda E. Wentzell ("the Wentzells") entered into a loan agreement with Bridges Mortgage Company ("Bridges"), in the principal amount of $128,118.00 with a 6.875% yearly interest rate. The required monthly payment was $841.65. Under the terms of the loan, the Wentzells would be in default "by failing to pay in full any monthly payment." The loan was secured by a Deed of Trust, which granted Bridges and its successors a security interest in the Wentzells' real property located at 2248 Club Moss Circle, Biloxi, Mississippi (the "Property"). Under the Deed of Trust, the mortgagee could invoke the power of sale and begin foreclosure proceedings on the Property following any default by the Wentzells. In November 2001, Bridges assigned the loan to Defendant-Appellee JPMorgan Chase Bank ("Chase").

Following Hurricane Katrina in August 2005, the Wentzells fell behind in making timely payments on the original loan. On June 1, 2006, they entered into a Loan Modification Agreement with Chase, resulting in a principal balance of $131,018.72, a yearly interest rate of 6.875%, and a new monthly payment of $909.97. The Wentzells "believed that they had secured the [2006] modification at the rate of 5.5%, but [were] told by representatives of Chase that the interest rate would be adjusted to the 5.5% sometime later after the modification had been executed."

The Wentzells allege that Chase never made the required modification and that Chase refused to address perceived discrepancies in their account activity history. The Wentzells further allege that, sometime before May 1, 2009, they entered into another modification agreement with Chase that changed their yearly interest rate to 5.25%. The Wentzells attached the alleged modification to their Petition, but the document was not executed by Chase.

2

No. 15-60179

The unexecuted modification agreement provided for a 5.25% yearly interest rate, a principal balance of $148,318.14, and monthly payments of $935.47.

The Wentzells' June 1, 2009, Mortgage Loan Statement reflected a principal balance of $148,232.41 with a 6.875% yearly interest rate, resulting in a due payment of $935.47. Chase's November 23, 2009, Mortgage Loan Statement to the Wentzells also listed a 6.875% yearly interest rate and a due monthly payment of $935.47. The November 2009 Statement further indicated that the Wentzells' past due payments totaled $5,326.02. The Wentzells allege that when they questioned the accuracy of the interest rate, Chase insisted that the rate remained at 6.875%. Though they "continued to seek assistance from Chase . . . in correcting the interest rate," it was "to no avail." The Wentzells made their last mortgage payment on or about July 22, 2009, and allege that they operated under the mistaken impression that their interest rate was 6.875%; they did not discover until after foreclosure that the statements listed "the apparent correct principal and interest amount" from the modification that lowered the rate to 5.25%.

Chase initiated foreclosure proceedings several times, but the Wentzells successfully postponed the sales. Chase finally foreclosed the Property on May 16, 2013, after the Wentzells "inadvertently" failed to recognize Chase's notice of foreclosure. At the sale, Chase purchased the Property as the highest bidder. On July 1, 2013, Chase filed a complaint for unlawful entry and detainer in state court in Harrison County, Mississippi. The record does not indicate the disposition of the state court action.

On April 14, 2014, the Wentzells filed a "Petition to Set Aside Foreclosure and for Other Appropriate Relief" (the "Petition") in the Chancery Court of Harrison County, Mississippi, naming Chase as the defendant. In their Petition, the Wentzells asked the district court to exercise its "equitable powers" to "set[] aside the foreclosure sale . . . and reinstate the loan." Chase

No. 15-60179

properly removed the action to federal district court based on diversity of citizenship. Chase then moved to dismiss the Petition for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court concluded that the Wentzells failed to state a plausible claim for equitable relief and dismissed the action with prejudice. The Wentzells timely appealed.

## II.

## A.

This court reviews a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)), *cert. denied*, 134 S. Ct. 650 (2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The well-pleaded facts must permit the court to infer 'more than the mere possibility of misconduct.'"[1] *Id.*

---

[1] The Wentzells' argument that Mississippi's more lenient pleading standards apply in this diversity case is foreclosed by precedent. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 834 (5th Cir. 2014) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)); *see also Wigginton v. Bank of New York Mellon*, 488 F. App'x 868, 870 (5th Cir. 2012) (per curiam) (rejecting an appellant's argument "that the district court erred by analyzing her complaint under the Federal Rules of Civil Procedure, rather than the less-demanding [state] pleading standards" and noting that there is "no right in federal court to retain more lenient state court procedural rules.").

No. 15-60179

B.

In their Petition, the Wentzells seek equitable relief to "set[] aside the foreclosure sale . . . and reinstate the loan [with Chase]." Because federal jurisdiction in this case is based on diversity of citizenship, Mississippi substantive law applies. *Nat'l Liab. & Fire Ins. Co.*, 756 F.3d at 834. Under Mississippi law, a court "has the power to relieve a mortgagor from the effect of an operative acceleration clause in a mortgage where the default of the mortgagor was the result of some unconscionable or inequitable conduct of the mortgagee." *Johnson v. Gore*, 80 So. 2d 731, 736 (Miss. 1955). That is, "[e]quity will not relieve the mortgagor from the consequence of a default unless the mortgagee has done some act which makes it unconscionable for him to take advantage of it." *Id.*; *see also Nat'l Mortg. Co. v. Williams*, 357 So. 2d 934, 937 (Miss. 1978).

Equity, however, is available only to those who "come with clean hands." *In re Estate of Richardson*, 903 So. 2d 51, 55 (Miss. 2005) (quotation omitted); *see also R.K. v. J.K.*, 946 So. 2d 764, 774 (Miss. 2007) ("It is one of the oldest and well known maxims that one seeking relief in equity must come with clean hands or face refusal by the court to aid in securing any right or granting any remedy."). "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

The Wentzells' Petition contains no factual allegations that plausibly suggest that their default was caused by any conduct by Chase. Instead, the Wentzells allege that their "mistaken belief that [Chase] was charging them at the higher interest rate . . . resulted in the property being foreclosed." Under the terms of the loan and the Deed of Trust, a failure to make timely monthly payments constitutes default and raises the potential of foreclosure. The

5

No. 15-60179

Wentzells essentially acknowledge their default, admitting in their Petition that they made their last loan payment "on or about July 22, 2009." They do not allege that Chase's conduct made them unable to make monthly payments. We thus agree with the district court that the Wentzells failed to plead "sufficient facts to demonstrate any unconscionable or inequitable conduct on the part of Chase which would rise to the level of excusing Plaintiffs from their default."

Even if the Wentzells' allegations were sufficient to state a plausible claim for equitable relief, the Petition itself makes clear that the Wentzells' claim is barred. The Wentzells made no mortgage payments during the nearly forty-six months between the July 22, 2009, mortgage payment and the eventual foreclosure sale. They do not allege any excuse for this failure or that their monthly payment obligations ever ceased. Because the Wentzells breached their obligations under the loan agreement, they do not come with clean hands and are unable to obtain equitable relief. *See, e.g.*, *Scruggs v. Wyatt*, 60 So. 3d 758, 772 (Miss. 2011) ("[T]he clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.") (emphasis, quotation, and alteration omitted); *see also Kansa Reinsurance*, 20 F.3d at 1366.

Based on the allegations in their Petition and on the incorporated documents, the Wentzells failed to state a plausible claim for equitable relief.

C.

The Wentzells' wrongful foreclosure claim is also precluded.[2] Under Mississippi law, "[a] foreclosure under the power of sale is properly conducted

---

[2] It is unclear whether the Wentzells presented a wrongful foreclosure claim in the district court. Neither the claim nor facts suggesting the claim appear in the Petition or in the Wentzells' Response to Chase's Motion to Dismiss. The district court, however, concluded that the Wentzells "fail[ed] to state a plausible wrongful foreclosure claim." Thus, we choose to address the argument.

if the constitutional, statutory, and contractual requirements entered into by the parties are met." *Lake Hillsdale Estates, Inc. v. Galloway*, 473 So. 2d 461, 465 (Miss. 1985) (citing *Peoples Bank & Tr. Co. v. L. & T. Developers*, 434 So. 2d 699 (Miss. 1983)). A mortgagor may also recover for wrongful foreclosure "where an unlawful foreclosure is attempted solely from a malicious desire to injure the mortgagor . . . [or] where the foreclosure is conducted negligently or in bad faith." *Nat'l Mortg. Co.*, 357 So. 2d at 935–36 (quotation omitted).

The Wentzells' Petition does not allege that Chase violated the constitutional, statutory, or contractual requirements for foreclosure. The Wentzells similarly do not allege that Chase's foreclosure was unlawful, motivated by bad faith, or conducted negligently. The Petition thus states no claim for wrongful foreclosure. *See Lake Hillsdale Estates, Inc.*, 473 So. 2d at 465; *Nat'l Mortg. Co.*, 357 So. 2d at 935–36.

Further, in the district court, the Wentzells did not argue that Chase's alleged "dual tracking" procedure[3]—or indeed any of Chase's conduct—amounted to a wrongful foreclosure. This new argument is thus waived. *See Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) ("Failure to raise an argument before the district court waives that argument . . . .") (per curiam). Even if the Wentzells were now allowed to raise this new theory, they acknowledge that Mississippi law contains no statutory prohibition of dual tracking.[4] The Deed of Trust also explicitly provides that any "forbearance by

---

[3] Dual tracking occurs "where a servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." *See* Press Release, Consumer Financial Protection Bureau, *CFPB Rules Establish Strong Protections for Homeowners Facing Foreclosure* (Jan. 17, 2013), *available at* http://www.consumerfinance.gov/newsroom/consumer-financial-protection-bureau-rules-establish-strong-protections-for-homeowners-facing-foreclosure/.

[4] Federal regulations restrict a mortgage servicer's ability to engage in dual tracking. *See* 12 C.F.R. § 1024.41. Courts have recognized a federal cause of action against a servicer for "dual tracking" under this provision. *See, e.g.*, *Houle v. Green Tree Servicing*, No. 14-CV-14654, 2015 WL 1867526, at *3 (E.D. Mich. Apr. 23, 2015) ("Borrowers have a private right

No. 15-60179

[Chase] in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy." The Wentzells fail to allege any conduct by Chase that was contrary to law or to the terms of the Deed of Trust.  Thus, the factual allegations in the Petition do not support a claim of wrongful foreclosure.

## D.

The Wentzells also assert additional claims of promissory estoppel and detrimental reliance; they further contend that Chase is equitably estopped from enforcing the loan agreement. These arguments were not presented to the district court and are thus waived.[5] *Fruge*, 663 F.3d at 747.

## III.

Finally, the Wentzells request leave to amend the Petition to include new factual allegations. Under Rule 15(a), the "court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a party must "expressly request" leave to amend. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). "A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *Id.* The Wentzells never requested leave to amend at the district court. They are thus not entitled to such relief from this court. *See Willard*, 336 F.3d at 387.

---

of action against lenders who evaluate a loss mitigation application while at the same time pursuing foreclosure."). The federal restrictions, however, apply only to a borrower's first loss mitigation application. *See* 12 C.F.R. § 1024.41(i). Since the Wentzells' claims relate to later alleged loan modifications, they have not stated a claim even under the federal regulation.

[5] Even if we were to consider these new arguments, the Wentzells' Petition would remain deficient. The Petition alleges only that the Wentzells "detrimentally relied on [Chase's] incorrect reporting of the interest rate." The Wentzells did not allege that Chase represented that it (1) would not foreclose on the Property, (2) would elect not to exercise its contractual remedies for the Wentzells' default, or (3) would excuse the Wentzells' late payments during the time of the alleged loan modifications or interest rate disputes. Thus, even accepting the Petition's factual allegations as true, we conclude that it fails "to state a claim to relief that is plausible on its face." *Toy*, 714 F.3d at 883.

No. 15-60179

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.