Mary Ellen JOHNSON, Plaintiff,

v.

SOUTHWEST RESEARCH INSTITUTE, Defendant.

CIVIL ACTION NO. SA-15-CA-297-FB

United States District Court,
W.D. Texas, San Antonio Division.

Signed 09/28/2016

Colin Walsh, Rob Wiley PC, Austin, TX, Robert Joseph Wiley, Rob Wiley, P.C., Dallas, TX, Gregory Allen Placzek, Rob Wiley, PC, San Antonio, TX, for Plaintiff.

Joseph A. Bourbois, Espey & Associates, PC, San Antonio, TX, Mario Alberto Barrera, Stephen J. Romero, Norton Rose Fulbright US LLP, San Antonio, TX, for Defendant.

## ORDER ACCEPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Fred Biery, United States District Judge

The Court has considered the Report and Recommendation of the United States Magistrate Judge filed in the above styled and numbered cause (docket # 28), Defendant Southwest Research Institute's Objection to the Report and Recommendation of the United States Magistrate Judge (docket # 30), and Plaintiff's Response to Defendant's Objections to the Report and Recommendation of the United States Magistrate Judge (docket # 37).

■ Where no party has objected to a Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review of them. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In such cases, the Court need only review the Report and Recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).

■ On the other hand, any Report or Recommendation to which there are objections requires de novo review by the Court. Such a review means that the Court will examine the entire record, and will make an independent assessment of the law. The Court need not, however, conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

As set forth in the Report and Recommendation, plaintiff began working at Southwest Research Institute in April of 2000. Over the years she received promotions and raises but claims that even with the raises, she was not paid as much as her male co-workers. She also asserts she was not given credit for her prior military experiences and was treated differently than male counterparts with regard to reimbursement of college-expense and receiving a promotion after she earned her degree. Plaintiff filed an internal discrimination complaint with Southwest Research in June of 2012, and filed an EEOC complaint on August 3, 2012, after receiving no response from her employer. Twelve days later on August 15, 2012, plaintiff was terminated. She was told her termination was based on "repeated violations of our timekeeping operating policies

and procedures, which has resulted in serious doubts as to [her] trustworthiness." Plaintiff maintains these reasons were false. Plaintiff amended her EEOC complaint following her termination to include a retaliation claim in addition to her discrimination claim. She received her right to sue notice and brought the instant case asserting claims for sex discrimination and retaliatory discharge.

Defendant filed a motion to dismiss plaintiff's retaliation claim, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that because plaintiff violated its applicable timekeeping and attendance policies, her right to access classified material was revoked which made her ineligible to perform any work in her division and resulted in her discharge. Because plaintiff's discharge was based on the denial of access to classified material, defendant further contends plaintiff's retaliation claim is barred by the doctrine set forth in *Dep't of the Navy v. Egan*, 484 U.S. 518, 527, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), and by Title VII's national security exception found in 42 U.S.C. § 2000e–2(g) and must be dismissed.

In response to defendant's claims, plaintiff argues that *Egan* and § 2000e–2(g) are inapplicable because the federal government never made a decision to revoke her security clearance and the defendant lacks the power to grant or deny governmental security clearance because it is a private company. In addition, plaintiff maintains the denial of her security clearance was not the basis for her discharge and any denial of access to classified documents came only as a result of her termination.

■ Magistrate Judge Bemporad recognized that at least with respect to plaintiff's argument concerning the *Egan* doctrine, it appears to be an issue of first impression in this circuit because "*Egan* and its Fifth Circuit progeny ... all involve government employees, and neither party cites Fifth Circuit precedent deciding whether the doctrine applies to a private company." Report & Recommendation, docket # 28 at page 868. However, because plaintiff's second argument raises factual issues that preclude dismissal at this time, Magistrate Judge Bemporad found no need to address the novel *Egan* issue. Instead, Magistrate Judge Bemporad found the evidence available at this stage of the case does not resolve the disputed issue of whether, as plaintiff claims, her revocation of access to classified information was not the cause of her discharge but rather the result of it. Accordingly, the recommendation is made to this Court that defendant's motion for failure to state a claim pursuant to Rule 12(b)(6) should be DENIED and defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) should be DENIED WITHOUT PREJUDICE.

The Court has reviewed the objections to the Report and Recommendation and has conducted a de novo review of the Magistrate Judge's Report and Recommendation and finds the objections to the Magistrate Judge's Recommendation are without merit at this time. Therefore, the Court hereby accepts, approves, and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Report and Recommendation (docket # 28). The Report and Recommendation shall be accepted pursuant to 28 U.S.C. § 636(b)(1) such that Defendant Southwest Research Institute's Motion to Dismiss Plaintiff's Retaliation Claim (docket # 11) pursuant to Rule 12(b)(1) shall be DENIED WITHOUT PREJUDICE at this time, and the Motion to Dismiss Plaintiff's Retaliation Claim (docket # 11) pursuant to Rule 12(b)(6) shall be DENIED.

Accordingly, it is hereby ORDERED that the Report and Recommendation of the United States Magistrate Judge (docket # 28), is ACCEPTED such that Defendant Southwest Research Institute's Motion to Dismiss Plaintiff's Retaliation Claim (docket # 11) pursuant to Rule 12(b)(1) is DENIED WITHOUT PREJUDICE at this time, and the Motion to Dismiss Plaintiff's Retaliation Claim (docket # 11) pursuant to Rule 12(b)(6) is DENIED.

It is so ORDERED.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Henry J. Bemporad, United States Magistrate Judge

**To the Honorable Fred Biery, United States District Judge:**

This report and recommendation concerns the Motion to Dismiss Plaintiff's Retaliation Claim filed by Defendant Southwest Research Institute ("SwRI"). (Docket Entry 11.) This case has been referred to the undersigned for pretrial proceedings. (*See* Docket Entry 14.) For the reasons set out below, I recommend that Defendant's Motion (Docket Entry 11) be **DENIED IN PART** and **DENIED WITHOUT PREJUDICE IN PART.**

### I. Jurisdiction.

Plaintiff's complaint asserts claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e. I have authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### II. Background.

Plaintiff began work at SwRI in April 2000 as an electronics technician, earning approximately $10 per hour. (Docket Entry 1, at 2; Docket Entry 11, at 5.) In 2004 and 2011, Plaintiff received promotions and raises; even with the raises, however, Plaintiff claims she did not make as much as male coworkers with similar experience and job duties. (Docket Entry 1, at 2.) Plaintiff further alleges that, unlike her male colleagues, she was not given credit for her prior military experience, and that she was treated differently than male counterparts with regard to college-expense reimbursement and receiving a promotion upon earning her degree. (*Id.* at 3–4.) Plaintiff filed an internal discrimination complaint at SwRI in June 2012. (Docket Entry 1, at 4.) Receiving no response to her complaint, she then filed an EEOC complaint on August 3, 2012. (*Id.*)

Plaintiff was terminated twelve days later, on August 15, 2012. (Docket Entry 1, at 4.) She was informed that the termination was based on "repeated violations of our timekeeping operating policies and procedures, which has resulted in serious doubts as to [her] trustworthiness"—bases that she claims were false. (*Id.*) After her termination, Plaintiff amended her EEOC complaint to allege retaliation in addition to discrimination. (Docket Entry 1, at 5.) She received notice of right to sue from the EEOC, and brought the instant action, alleging sex discrimination and retaliatory discharge. (*Id.* at 5–6.)

SwRI has moved to dismiss Plaintiff's retaliation claim. It alleges that, due to Plaintiff's violations of its applicable timekeeping and attendance policies, it revoked Plaintiff's right to access classified material, which made her ineligible to perform any work in her division. This led to her being discharged. (Docket 11, at 7.) Because her discharge was based on the denial of access to classified material, SwRI argues that Plaintiff's retaliation claim is barred by the doctrine espoused in *Dep't of the Navy v. Egan*, 484 U.S. 518, 527, 108

S.Ct. 818, 98 L.Ed.2d 918 (1988), as well as by Title VII's national security exception, 42 U.S.C. § 2000e–2(g). (Docket Entry 11, at 1-2.)

### III. Law Applicable to SwRI's Motion to Dismiss.

 SwRI brings its motion as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 11, at 1.) The same pleading standard applies when evaluating Rule 12(b)(1) and Rule 12(b)(6) motions. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). In either case, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane*, 529 F.3d at 557; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This analysis is generally confined to a review of the complaint and its proper attachments. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). "However, under Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Lane*, 529 F.3d at 557 (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

### IV. Analysis

SwRI bases its motion on the national-security doctrine established by *Egan,* and the specific national-security exception from liability provided in Title VII. This report analyzes both bases together.

In *Egan,* a laborer at a naval refit facility lost his job when he was denied a required security clearance. 484 U.S. at 520, 108 S.Ct. 818. He was discharged pursuant to the Civil Service Reform Act ("CSRA"), which requires a federal agency to show cause for the dismissal. *See* 5 U.S.C. § 7513(a). The discharged employee is entitled to appeal the agency's action to the Merit Systems Protection Board, which must afford the employee a hearing. *See* 5 U.S.C. § 7701(a)(1). In the course of reviewing the discharge in Egan's case, however, the Board ruled that it lacked authority to review the substance of an underlying decision to deny or revoke his security clearance. 484 U.S. at 520, 108 S.Ct. 818.

The Supreme Court agreed. It found that the CSRA did not confer authority to review a security-clearance determination. If an employee is removed for "cause," the Board could determine whether "in fact clearance was denied, and whether transfer to a nonsensitive position was feasible." 484 U.S. at 531, 108 S.Ct. 818. But the Court held that Act did not allow the Board to go further than that, and review the denial of security clearance. *Id.*

Though *Egan* arose in the context of the CSRA, the Fifth Circuit has applied it in the Title VII context. In *Perez v. FBI,* the Court held that examination of the "proffered reasons for revoking [an] employee's security clearance" in a Title VII challenge would be "an impermissible intrusion by the Judicial Branch into the authority of the Executive Branch over matters of national security." 71 F.3d 513, 515 (5th Cir.

1995); *see also Toy v. Holder*, 714 F.3d 881, 884 (5th Cir. 2013) (discussing *Perez* ).

SwRI also invokes the national-security exception provided in Title VII, which provides that it is not an unlawful employment practice:

for an employer to discharge any individual from any position, ... if—

(1) the occupancy of such position, or access to the premises in or upon which any part of the duties of such position is performed or is to be performed, is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and

(2) such individual has not fulfilled or has ceased to fulfill that requirement.

42 U.S.C. § 2000e–2(g). The Fifth Circuit has interpreted the "security program" provision in the exception broadly, "to mean any set of regulations related to matters of national security." *Toy*, 714 F.3d at 886. "There must be a specific statute or [executive order] however, requiring or implementing such regulations." *Id.*

SwRI argues that the *Egan* doctrine and § 2000e–2(g) both apply in this case, barring any review of its decision to deny security access to Plaintiff, and accordingly its decision to discharge her. (Docket Entry 11, at 9-10.) Plaintiff appears to make two arguments in response to these claims. First, she argues that *Egan* and § 2000e–2(g) are inapplicable because the federal government never made a decision to revoke Plaintiff's clearance, and SwRI was a private company that lacked the power to grant or deny governmental security clearance. (*See* Docket Entry 27 at 5-6.) Second, Plaintiff argues that denial of a security clearance was not the basis for her discharge, and that any denial of access to

classified documents came only as a result of her termination. (*See id.* at 20–21.)

At least with regard to the *Egan* doctrine, Plaintiff's argument appears to raise an issue of first impression in this circuit. *Egan* and its Fifth Circuit progeny cited above all involve government employees, and neither party cites Fifth Circuit precedent deciding whether the doctrine applies to a private company. *But cf. Beattie v. Boeing Co.*, 43 F.3d 559, 566 (10th Cir. 1994) (applying *Egan* to private company); *Zeinali v. Raytheon Co.*, 636 F.3d 544, 551 (9th Cir. 2011) (distinguishing *Beattie*). The Court need not address this novel issue, however, because Plaintiff's second argument raises factual issues that preclude dismissal at this time. Plaintiff suggests that the revocation of Plaintiff's access to classified information was not the *cause* of her discharge, but rather the *result* of it. (Docket Entry 27, at 21.) SwRI disputes this claim (*see* Docket Entry 26, at 6-8), but the dispute cannot be resolved on the evidence available to the Court at this time.

In their motion papers, the parties have attached a number of employment documents concerning Plaintiff's termination, including:

- An August 9, 2012, memorandum recommending Plaintiff's discharge (Docket Entry 27-1, at 11-12);

- An email from the same date, concurring in the recommendation (Docket Entry 27-1, at 14);

- The August 15, 2012, termination notice sent to Plaintiff (Docket Entry 11-2, at 83);

- A division-wide email from that same date, sent by Vice President Bob Keys, announcing that Plaintiff was no longer an SwRI employee (Docket Entry 11-2, at 81); and

- An "Incident History" report from the same date (Docket Entry 27-1, at 25).

Considered together, these documents simply do not resolve the issue of whether Plaintiff was discharged first, or denied security access first.

Neither the memorandum recommending Plaintiff's discharge, nor the email concurring in the recommendation, nor the letter to Plaintiff notifying her of the termination, mention revocation of her access to classified material. (*See* Docket Entry 11-2, at 83; Docket Entry 27-1, at 11-12, 14.) The notice letter does mention Plaintiff's lack of "trustworthiness," a term which, according to SwRI, matches a criterion for security clearance. (Docket Entry 11-2, at 83; *see* Docket Entry 11, at 11-12.) But, as Plaintiff argues (*see* Docket Entry 27, at 17), it stretches inferences too far to determine, based on the use of this one word, that Plaintiff's security access was in fact revoked before her discharge, and that her discharge was the result of the revocation.

The other documents mentioned above do discuss access to classified information. These documents, however, are ambiguous as to whether the revocation of access occurred simultaneously with, or subsequent to, the termination decision. The division-wide email sent by Keys states that, "[e]ffective immediately, [Plaintiff] is no longer an employee of SwRI. She has been debriefed from access to any classified information and has no authorization for access to any SwRI information or facilities." (Docket Entry 11-2, at 81.) This does not show that the revocation of access preceded the termination, let alone that the revocation caused the termination. The "Incident History" report leaves the issue similarly unresolved:

> Ms. Johnson's employment was terminated for cause on 8/15/12, due to her falsifying timesheet records and excessive tardiness. Her actions constitute fraud and unreliable behavior and are evidence of the misuse of employer's time and/or resources which call into question her honesty, integrity and trustworthiness. Ms. Johnson has had access to very sensitive classified information. The concern is that as a result of her termination, Ms. Johnson may pose a security risk by becoming an "insider threat."

(Docket Entry 27-1, at 25.) As the report states, Ms. Johnson previously "had access to very sensitive classified information," and SwRI considers her a security risk "as a result of her termination." But the report does not indicate whether the termination, or the denial of access, came first. In sum, the evidence before the Court can be read to support Plaintiff's claim that her termination was based on reasons other than the revocation of access to classified information, and that the revocation was simply the result of her discharge. If so, Plaintiff's retaliation claim may be considered without violating either *Egan* or § 2000e–2(g). Cf. *Zeinali*, 636 F.3d at 551 (allowing employment discrimination suit against private employer to go forward where court could avoid examining merits of security clearance decision).

Given this state of evidence, dismissal is not warranted at this time either under Rule 12(b)(6) or 12(b)(1). Under Rule 12(b)(6), a plaintiff's factual allegations must be taken as true, and the complaint construed in her favor. *See Lane*, 529 F.3d at 557. Under Rule 12(b)(1), the Court may resolve factual disputes in determining its own jurisdiction, *see Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004); however, resolution at this juncture seems premature, given the documentary evidence that has so far been presented, and the lack of full discovery at this stage of proceedings. Under either standard, Plaintiff's claim remains plausible at this time. *Cf. Lane*, 529 F.3d at 557. Accordingly,

SwRI's Rule 12(b)(6) motion should be denied, and SwRI's Rule 12(b)(1) motion should be denied without prejudice to reurging the issue at a later stage, either under that rule,[1] or as a motion for summary judgment under Federal Rule of Civil Procedure 56.

## V. Conclusion.

For these reasons, I recommend that SwRI's Motion (Docket Entry 11) be **DENIED IN PART** and **DENIED WITHOUT PREJUDICE IN PART.** SwRI's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) should be **DENIED.** SwRI's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) should be **DENIED WITHOUT PREJUDICE.**

## VI. Instructions For Service And Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen** days after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the

proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn,* 474 U.S. 140, 149–52, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on January 5, 2016.

---

**1.** *Cf.* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject- matter jurisdiction, it must dismiss the action").